THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WINFRED JOHNSON, Defendant-Appellant.

First District (1st Division)    No. 77-711

Opinion filed April 3, 1978.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Francis X. Speh, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Winfred Johnson, was charged with theft in that on September 19, 1976, he obtained control by deception over property—foodstuff—of the value of $150 or less, the property of National Food Store, concealing such property, knowing such concealment would

probably deprive National Food Store permanently of the use and benefit of that property. (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(b)(3).) After a bench trial, he was found guilty and sentenced to six months probation on condition that he serve the first two days in the House of Correction, with those two days considered served.

Defendant appeals, contending that he was not proved guilty of the offense of theft by deception.

The section of the Criminal Code under which defendant was charged provides (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(b)(3)):

> "A person commits theft when he knowingly:
>
> * * *
>
> (b) Obtains by deception control over property of the owner;
>
> * * *
>
> and
>
> * * *
>
> (3) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit."

The record discloses the following:

Steven Brisco, a security guard at the National Tea Company store at 1372 North Milwaukee Avenue, Chicago, testified that on September 19, 1976, he saw defendant enter the store with a child and a woman, later identified as defendant's wife. All three walked down an aisle to the rear of the store. Brisco saw the woman open her purse and the defendant place two smoked hams in it. The three then went to a display of wash cloths, where defendant's wife placed four wash cloths in her purse with the hams. She then went down the aisle to the front of the store, past the cash registers and out the exit door. Defendant had an eight-pack of Coca-Cola in his cart and got in the line for the cash register. He left the cart in the cashier line and went over toward the customer service office. Brisco identified himself to defendant and told defendant to come outside with him to apprehend defendant's wife. As Brisco and defendant were walking outside, defendant turned to Brisco and said, "If you are gunna bust anybody, bust me."

Brisco asked defendant to come with him to the car, take his wife out of the car with the merchandise she had in her purse. Defendant went to the car and said something to his wife. She handed him the purse and he came to Brisco with the merchandise inside the purse. Defendant's wife drove off in the car with the child. Brisco took defendant back into the store. Defendant went to one of the aisles, emptied the purse of the hams and wash cloths and attempted to leave with the empty purse, but was restrained by Brisco. Brisco did not give defendant permission to take the merchandise from the store.

Defendant, Winfred Johnson, testified that he had gone into the National Food Store to buy some pop and a loaf of bread. Earlier that afternoon he, his wife, two children and a niece had been in another National Food, where he had purchased three bags of popcorn and cheese nips, some face cloths and two hams. He also wanted some Roman Meal bread and some Cokes. The store was out of the bread and he didn't get the Cokes. He then, with his wife and two sons, went to the National Food Store on Milwaukee Avenue. He got a six-pack of Cokes, put them in his cart, where he had put his baby son, and took the cart up to the checkout counter, where he lifted his son out. That child and his wife and other son walked out of the store. He was in the checkout line when Brisco said, "Is that your wife?" Defendant said, "Yes", and Brisco said, "Look, I saw her purse when she walked in; it was light and I want you to go bring that purse back in." Defendant went and got the purse and took it to Brisco. They then went back into the store and defendant dropped all of the merchandise in the meat counter, even though he had paid for them.

Defendant testified that when they bought the two hams, wash cloths and some cheese nips at the other National Food Store, they got receipts for them, but that he gave them to a little boy going up and down the checkout counters collecting receipts. The hams were in his wife's purse because they didn't have a shopping bag.

■■ Defendant argues that the State's evidence did not prove beyond a reasonable doubt the offense charged (theft by deception); and that, even though the question of variance was not raised in the trial court, this court should consider it under the plain error doctrine (Supreme Court Rule 615(a); Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)).

The standard to be applied when a fatal variance is raised for the first time on appeal is well stated in *People v. Nickson* (1978), 58 Ill. App. 3d 470, 479, 374 N.E.2d 804, 810:

> "* * * In this situation, the standard for review regarding an alleged variance is much the same as when an indictment is attacked for the first time on appeal. (*People v. Johnson* (1976), 65 Ill. 2d 332, 337, 357 N.E.2d 1166; *People v. Figgers* (1962), 23 Ill. 2d 516, 518-19, 179 N.E.2d 626; *People v. Miller* (1977), 47 Ill. App. 3d 412, 417, 362 N.E.2d 22.) Thus, 'a variance, to vitiate a trial, must be material and be of such character as may mislead the accused in making his defense or expose him to double jeopardy.' (*Figgers*, 23 Ill. 2d 516, 518-19; see also *People v. Johnson* (1977), 50 Ill. App. 3d 695, 703, 365 N.E.2d 737.) Defendant does not claim he was misled in the preparation of his defense by this difference in nomenclature and, as above shown, the record adequately protects him from double jeopardy resulting from future indictments premised upon the same offenses charged."

Similarly, in the case before us defendant makes no claim that he was misled in the preparation of his defense and, as shown above, the record adequately protects him from double jeopardy resulting from any future charges premised upon the same offense.

In addition, defendant's claim that there was no proof of deception is without merit. Defendant argues that there was no deception involved in his actions because he merely removed goods from the shelf in the same manner as any other patron in a self-service market. But this ignores the testimony of the security guard that defendant, after removing the smoked hams from the shelf, placed them in his wife's purse, then picked up and placed in his shopping cart a carton of Cokes and wheeled the cart to the checkout line to pay for the Cokes, while his wife left the store with the hams in her purse. Such actions were calculated to deceive the employees of the store into believing that the only goods being taken from the store were being paid for. Clearly, this is theft by deception for which defendant was as much a principal as his wife. The weight to be given defendant's testimony to justify the presence of the hams in his wife's purse—that they had been purchased in another store which was out of shopping bags and that he had given his receipt for them to a small boy—is governed by the legal principle that "when a defendant elects to justify or explain his presence at or near the scene of a crime, or his connection therewith, he must tell a reasonable story or be judged by its improbabilities. [Citations.]" *People v. Harter* (1967), 86 Ill. App. 2d 461, 471, 230 N.E.2d 15, 20. Accord, *People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 148, 79 S. Ct. 222.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and BUCKLEY, J., concur.