THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEONARD A. PULEO, Defendant-Appellant.

First District (5th Division)    No. 80-1374

Opinion filed May 15, 1981.

458

Di Natale & Montemurro, of Chicago (Anthony M. Montemurro, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Gloria G. Coco, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted of theft by deception and received a sentence of 2 to 6 years. On appeal, he contends that (1) he was not proved guilty beyond a reasonable doubt; (2) there was a fatal variance between the offense charged and the proof at trial; and (3) the trial court improperly denied him a preliminary hearing.

The testimony at trial disclosed that a man identifying himself as Mike Spracht informed Andrew F. Maletich, Jr., that he had television sets for sale, and a few days later he telephoned Andrew F. Maletich, Sr., and explained that he worked for a furniture store and, due to financial problems, his boss was selling his stock of television sets. Spracht told Maletich, Sr., that he could purchase 15 to 20 sets for $4,700 if he paid cash and picked them up in his own truck. Maletich, Sr., who was president of

Rite-Way Tile and Carpet Company (Rite-Way), and his son, who was vice president, thought those terms fair and agreed to the purchase—intending to use the sets to promote carpet sales.

Then, on July 26, 1977, Maletich, Sr., received another telephone call at his office from Mike Spracht, who told Maletich, Sr., to meet him in the Rite-Way company truck at 22d and Central Avenue in Cicero. Immediately thereafter, Maletich, Sr., cashed a check for $4,700, counted the cash in front of his son, and put the money into a white envelope which he gave to his son and instructed him to take the company truck to meet Spracht, who would direct him to a warehouse where he was to give Spracht the money in exchange for the television sets.

That same day, Maletich, Jr., drove the truck to the prearranged location and was met by defendant, who directed him to drive around the block to a warehouse where they sat in the vehicle for about five minutes while defendant showed him a brochure from which he was to choose the sets he wanted. Defendant then said that he was going to see if his boss, who lived around the corner, was at home and that Maletich, Jr., should give him the money and wait for him. Maletich, Jr., handed defendant the envelope containing the money and, after they conversed for another five minutes, defendant left holding the money in his hands. Maletich, Jr., waited for awhile and then looked for but could not find defendant.

The next day, Mike Spracht called Maletich, Sr., and, after apologizing for his abrupt disappearance the day before, said he would return the money. He again promised to do so in a telephone conversation a few days later.

OPINION

Defendant first contends that he was not proved guilty of theft by deception beyond a reasonable doubt. In support thereof, he argues that no evidence was adduced to show the money had been withdrawn from the corporate account or the victim's personal account; that the cancelled check was not offered in evidence; that the existence of the corporation was not established; and that there was no evidence to show that he was the person who received the money or to negate the fact that Andrew Maletich, Jr., may have absconded with the money.

■■ The crime of theft by deception is defined in section 16—1(b) of the Criminal Code of 1961, which provides:

"A person commits theft when he knowingly:

\* \* \*

      (b) Obtains by deception control over property of the owner; \* \* \*." (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(b).)

The elements essential to sustain a charge of theft by deception are that a named person owned or possessed specified property; that the accused knowingly obtained by deception control over that property; and that the accused acted with the intent to permanently deprive the named person of the use and benefit of that property. See *People v. Decker* (1974), 19 Ill. App. 3d 86, 311 N.E.2d 228.

■■ The record in the case at bar discloses that following telephone conversations with a man identifying himself as Mike Spracht, who offered 15 to 20 television sets for about $4,700, Maletich, Sr., cashed a check for that amount and gave it to his son, with instructions to pick up the sets in the company truck in exchange for the money; that Maletich, Jr., drove the truck to a certain location where he met defendant, who directed him to drive for about 10 minutes, and when they stopped defendant showed Maletich, Jr., a brochure from which he was to select the sets he wanted; that defendant then asked for the money and told him to wait in the truck while he (defendant) went to see if his boss was home; that Maletich, Jr., gave defendant the envelope containing the money and, after they conversed for another five minutes in the truck, defendant left holding the money in his hands; and that Maletich, Jr., waited another 5 to 10 minutes and then tried but could not find defendant.

In our view, the evidence established that Maletich, Jr., was the named person who had possession of the property when it was stolen; that defendant knowingly obtained by deception control over it by falsely representing himself to be an employee of a company that was liquidating its stock of television sets at a discount; and that when he left with the money and did not return, defendant intended to permanently deprive Maletich, Jr., of the use and benefit thereof. On the basis of this evidence, we think it clear that all reasonable doubt as to defendant's guilt of theft by deception was sufficiently removed.

■ It is also significant that the testimony presented at trial runs counter to defendant's claim that there was no proof of a $4,700 check written by Andrew Maletich, Sr., either from the corporate account or the victim's personal account, or by a receipt for that amount signed by defendant. Maletich, Sr., testified that immediately after the third telephone conversation with Mike Spracht, he cashed a check for $4,700, counted the money in front of his son, and put it into a white envelope; and that he then gave the cash to his son, instructing him to give it to Spracht in exchange for the television sets. Maletich, Jr., testified that he handed the white unsealed envelope containing the money to defendant, who left holding the money in his hands. Thus, contrary to defendant's assertion, it appears clear that the stolen property was identified through this testimony as belonging to the Maletiches.

■■■ There remains, however, the question of whether that identification was sufficient and, in this regard, it is established that if the sufficiency of the identification of stolen property is in issue, the ultimate determination as to the weight and credibility of the evidence rests with the trier of fact and, absent abuse of discretion, that finding will stand. (*People v. Panus* (1979), 76 Ill. 2d 263, 391 N.E.2d 376; *People v. Mertens* (1979), 77 Ill. App. 3d 791, 396 N.E.2d 595.) In the present case, the trial court necessarily found the testimony of the Maletiches to be credible and that the State's failure to produce a cancelled check or a receipt was not critical to its determination of guilt. In view of the fact that the Maletiches corroborated each other and no contrary evidence was presented, we see no abuse of discretion in the trial court's finding that identification of the stolen property was sufficient.

■■■ Defendant's claim that the corporate existence of Rite-Way was not established is also without merit. Whether the $4,700 in fact belonged to Maletich, Sr., or to the corporation is immaterial for purposes of proving the crime of theft by deception, since the evidence clearly demonstrates that defendant took property belonging to another. Nonetheless, it appears that the existence of the corporation was established. In any prosecution for theft, the State must allege and prove ownership of the stolen property in someone other than the accused (*People v. Drake* (1974), 20 Ill. App. 3d 762, 314 N.E.2d 532; *People v. Demos* (1971), 3 Ill. App. 3d 284, 278 N.E.2d 89), but if the stolen property is allegedly owned by a corporation, proof of its legal existence is necessary to secure conviction (*People v. Rance* (1979), 68 Ill. App. 3d 639, 386 N.E.2d 566; *People v. Geraci* (1974), 25 Ill. App. 3d 191, 323 N.E.2d 48). Such proof may be through introduction of the corporate charter, certified copy of the corporate charter, or by evidence establishing a prima facie case of corporate existence (*People v. Gordon* (1955), 5 Ill. 2d 91, 125 N.E.2d 73), or proof of corporate existence may be shown through oral testimony of a person with knowledge of the fact in the absence of contrary evidence (*People v. DeBartolo* (1975), 24 Ill. App. 3d 1000, 322 N.E.2d 251; see *Rance*). In the instant case, Maletich, Sr., testified that he was president "of Rite-Way Tile and Carpet Company, Inc." and, on cross-examination, he was asked and answered that Rite-Way was a corporation.

Finally, the testimony belies defendant's claim that it was not shown that he received the money or that Maletich, Jr., did not abscond with it. In this regard, Maletich, Jr., testified that he drove the company truck to the prearranged location, where defendant entered and instructed him to drive around for approximately 10 minutes before telling him to stop; that they sat in the truck for another five minutes while defendant showed him a brochure concerning television sets; and that during this 15- to 20-minute

period, he had been able to look directly at defendant and, at his request, gave him the envelope of money.

■■ The determination of credibility rests with the trier of fact, and a conviction based thereon will not be disturbed on review unless the evidence was so improbable as to raise a reasonable doubt of guilt (*People v. Flores* (1979), 79 Ill. App. 3d 869, 398 N.E.2d 1132), and a conviction for theft can be sustained by the positive testimony of a single, credible witness (*People v. Abney* (1978), 65 Ill. App. 3d 167, 382 N.E.2d 407; also see *People v. Johnson* (1978), 59 Ill. App. 3d 115, 376 N.E.2d 8). The defense failed to contradict the testimony of Maletich, Jr., that the money was given to defendant and not returned by him. In addition, this testimony was corroborated by his father, who said that subsequent to the incident defendant telephoned on two separate days promising to return the money and when defendant later returned $500, he told Maletich, Sr., that he would "like to pay you back all of the money that I took from you." It is implicit in the trial court's judgment that it found the Maletiches to be sufficiently positive and credible to support the finding of guilt, and we cannot say their testimony was so improbable as to reach the level of doubt requiring this court to set aside the conviction. See *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858; *People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.

Defendant next contends that there existed a fatal variance between the facts alleged in the information and the proof at trial. Pointing out that he was charged with theft, in that he knowingly obtained by deception the property of Maletich, Jr., he argues that no evidence was presented to show that Maletich, Jr., had any possessory right in the property. We initially note that defendant failed to file a post-trial motion for a new trial within 30 days, as required by section 116—1(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 116—1(b)), and consequently has waived this contention of error (*People v. Hasting* (1978), 56 Ill. App. 3d 724, 372 N.E.2d 702; *People v. Williams* (1977), 52 Ill. App. 3d 81, 367 N.E.2d 167). Nevertheless, we believe that it has no merit.

■■ In general, a variance will invalidate a guilty verdict if it is material and of such character as may mislead the accused in the preparation of his defense or make him susceptible to double jeopardy (*People v. Figgers* (1962), 23 Ill. 2d 516, 179 N.E.2d 626), and the purpose of the charging instrument is served if it apprises the accused of the exact crime charged so that he may prepare a defense and plead an acquittal or conviction in bar of a subsequent prosecution for the same offense (*People v. Ballard* (1978), 65 Ill. App. 3d 831, 382 N.E.2d 800, *cert. denied* (1979), 444 U.S.

925, 62 L. Ed. 2d 180, 100 S. Ct. 262). Those principles apply likewise to the requirement that ownership be alleged in the prosecution of theft offenses. (*People v. Harden* (1969), 42 Ill. 2d 301, 247 N.E.2d 404; *People v. Parker* (1979), 77 Ill. App. 3d 536, 396 N.E.2d 97; *People v. Johnson; People v. Tucker* (1976), 35 Ill. App. 3d 630, 342 N.E.2d 395.) Thus, "[w]hen the purpose of the allegation and proof of ownership have been realized a conviction will not be defeated even by a variance between the charge and the proof which does not prejudice an accused." *Parker*, 77 Ill. App. 3d 536, 538, 396 N.E.2d 97, 100.

The charge in the present case stated that defendant "knowingly obtained by deception control over $4,700.00, the property of Andrew F. Maletich, Jr., intending to deprive Andrew F. Maletich, Jr., permanently of the use of such property." The evidence adduced at trial established that the money was the property of Rite-Way or Maletich, Sr., who gave it to his son with instructions to give it to defendant as payment for the television sets. Maletich, Jr., said that he gave the money to defendant, who did not produce the sets and did not return the money to him. Maletich, Sr., testified that only $500 of the money was returned by defendant.

For purposes of theft by deception, the term "owner" is defined in section 15—2 of the Criminal Code of 1961, which provides in relevant part:

> " '[O]wner' means any person, other than the offender, who has possession or any other interest in the property involved, even though such interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property." (Ill. Rev. Stat. 1977, ch. 38, par. 15—2.)

We think the evidence clearly established that Maletich, Jr., acting in his capacity as vice president of Rite-Way and at the behest of his father, had both possession of and a possessory interest in the $4,700 and that these facts fit within the definition of owner in section 15—2.

The case law supports the view that specific ownership of property need not be proved if it is shown that the person named as victim in the charging instrument had some possessory interest in the property at the time of the offense. In *People v. Decker*, defendant falsely represented himself as an insurance agent to a husband and wife doing business as a partnership in their insurance agency. The victims placed insurance policies through defendant's nonexistent company. In affirming the conviction, the court found that the victims as co-partners were trustees of a premium fund trust account maintained to segregate premium payments payable to various insurance companies for the insurance policies that were issued. The victims thus had sufficient possessory interest in the funds represented by three checks obtained by defendant which thereby established ownership in the stolen property within the meaning of the

statute. Similarly, in *People v. Tucker*, defendant argued that a fatal variance existed between the allegation of ownership of two bicycles in a Mrs. Harrington and the proof, at trial, of ownership in her children. The court noted that while the children owned the bicycles, Mrs. Harrington testified that the bicycles were taken from her and that she had been negotiating with defendant either for their return or for payment to her of their value. In affirming the conviction, the court held the mother's interest in the bicycles was sufficient to come within the "any other interest" definition of ownership in section 15—2. Also see *People v. Holloway* (1980), 90 Ill. App. 3d 1098, 414 N.E.2d 490.

■■ Moreover, defendant fails to show prejudice from the alleged variance and we see none, as he was adequately apprised of the charge against him, was not impeded in the preparation and presentation of a defense, and could successfully plead the conviction as a bar to a subsequent prosecution for the same offense. In summary, we believe the charging instrument and the supporting proof were consistent in all essential matters.

Defendant finally contends he was improperly denied a preliminary hearing. The record reveals that in addition to his plea of guilty, defendant and his attorney signed a preliminary hearing waiver form. Defendant was later permitted to withdraw the guilty plea because he was not fully informed as to the sentencing alternatives, and he then moved to reinstate the preliminary hearing, arguing that since his plea of guilty had been vacated he was entitled to the hearing. His motion was denied, and he now maintains that when the trial court allowed the withdrawal of his guilty plea, it should also have granted his motion for a preliminary hearing. He cites no supporting authority other than cases holding that a defendant is entitled to counsel at the preliminary hearing because it is a critical stage of the proceedings. We initially note that this contention was waived by his failure to file a timely motion for a new trial. In any event, we find that it has no merit.

■■ When defendant objected to the initial sentencing and was permitted to withdraw his guilty plea, he was then tried and sentenced to a term of 2 to 6 years. His objection now is not to that sentence but, rather, to the denial of a preliminary hearing prior to his trial. While such a hearing is a critical stage in the proceedings, its function is limited to a prompt determination of whether the crime charged was committed and, if so, whether probable cause exists to believe that defendant was the perpetrator (Ill. Const. 1970, art. I, §7; *People v. Horton* (1976), 65 Ill. 2d 413, 358 N.E.2d 1121; *People v. Kent* (1972), 54 Ill. 2d 161, 295 N.E.2d 710), and a waiver of a preliminary hearing will be upheld where understandingly made. As stated in *People v. Krison* (1978), 63 Ill. App. 3d 531, 537-38, 380 N.E.2d 449, 454:

"[N]either the fundamental principles of due process nor our state

constitution requires that a particular procedure be employed for a valid waiver of a preliminary hearing. Rather, all that is required is that the waiver be understandingly made. (6 Record of Proceedings, Sixth Illinois Constitutional Convention 75.)"

Defendant here did not assert lack of probable cause as a basis for withdrawing his guilty plea, contending only that the sentencing alternatives had not been made clear to him. Neither does he now assert that probable cause did not exist or that his initial waiver of a preliminary hearing was not understandingly made. Under such circumstances, we see no error in the denial of defendant's motion.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.