UNITED STATES of America ex rel. Melvin HAYWOOD, Petitioner-Appellant,

v.

Michael O'LEARY, Warden, Stateville Penitentiary, Respondent-Appellee.

No. 86–1278.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1986.

Decided Aug. 5, 1987.

William H. Theis, Chicago, Ill., for petitioner-appellant.

Nathan P. Maddox, Asst. Atty. Gen., Springfield, Ill., for respondent-appellee.

Before COFFEY and RIPPLE, Circuit Judges and CAMPBELL, Senior District Judge.[*]

---

[*] The Honorable William J. Campbell of the Northern District of Illinois sitting by designation.

1. Title 28, § 2254(d) provides:
   "(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an

COFFEY, Circuit Judge.

Melvin Haywood, petitioner-appellant, appeals the district court's denial of his petition for a writ of habeas corpus. We affirm.

**I**

The facts of this case have been detailed in previously reported opinions, *People v. Haywood*, 60 Ill.App.3d 236, 17 Ill.Dec. 329, 376 N.E.2d 328 (Ill.App.Ct.1978); *U.S. ex rel. Haywood v. Wolff*, 490 F.Supp. 1154 (N.D.Ill.1980); *U.S. ex rel. Haywood v. Wolff*, 658 F.2d 455 (7th Cir.1981), thus we will delineate only those facts necessary to this appeal. We are mindful that 28 U.S.C. § 2254(d)[1] requires us to presume the accuracy of the findings of fact of state courts. *Sumner v. Mata*, 455 U.S. 591, 597–98, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982); *United States ex rel. Kosik v. Napoli*, 814 F.2d 1151, 1153 (7th Cir.1987).

In the early morning hours of July 2, 1972, three men[2] entered an apartment at 1448 East 68th Street in Chicago, Illinois. Shortly after entry, shooting erupted resulting in the deaths of two men, Lee Jackson and William Throop, and one woman, Melba Grate. Two other men, Charles Stanton and Harry Daniels, were wounded. At the hospital, Stanton told Officers Thomas McKenna and Thomas Ferry that the man who shot him was short and stocky and that while in the apartment he had seen a picture of at least one of the assailants. Upon investigation after the shooting, the officers discovered a number of pictures in the apartment (approximately 120). Officer McKenna and his partner returned to the hospital and displayed the

officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, ..."

2. There is some confusion as to whether three or four men entered the apartment. The Illinois Appellate Court did not directly address the conflict. Charles Stanton testified at Haywood's preliminary hearing that three men entered. We note that Haywood states in his brief that three men entered the apartment.

pictures (approximately 120) to Stanton and asked him to indicate with a mark on the back of any of the pictures any person he could identify as being part of the group of people present during the shooting. Stanton marked four separate pictures of Haywood identifying him as one of the three men who had entered the apartment on July 2, 1972 and participated in the shooting spree. Stanton also identified Harry Daniels and Willie Bedgood as the other two men involved from a second group of pictures.

Based upon Stanton's positive photographic identification of Haywood and the information he gave to the police, a murder warrant was issued for Haywood's arrest shortly thereafter but was not executed until almost two years later on June 12, 1974. On July 11, 1974, a preliminary hearing was held to determine if there was probable cause to believe that Haywood had committed a crime. Ill.Rev.Stat. ch. 38 § 109–3(a); *see also Williams v. Kobel*, 789 F.2d 463, 468 (7th Cir.1986).[3] Stanton when called as a witness entered the courtroom from the back of the room and took the witness stand. When asked to identify the person who killed Melba Grate and wounded him, Stanton, a black man, in reply to a question on cross-examination as to how long he looked at Haywood before identifying him replied "four or five" seconds before pointing to Haywood and described what he was wearing. Haywood was identified while sitting at a counsel table.[4] Stanton testified that Haywood shot him while in the living room and that he [5] and another woman, Shirley Scott, ran

back to a rear bedroom where Scott hid in a closet and he hid under a bed. He further testified that he was able to observe Haywood murder his girlfriend with a shot to the head. Haywood then entered the bedroom and directed Stanton to get up, and fired at him again, this time hitting him (Stanton) in the stomach causing him to fall to the floor. Stanton was hospitalized and succumbed thereafter of causes unrelated to the shooting before Haywood's trial.[6] A short time later a Cook County grand jury returned a five count indictment charging Haywood with three murders, attempted murder, and aggravated battery.

Although Stanton died of causes unrelated to the shooting before being able to testify at Haywood's trial, he did live long enough to have an opportunity to testify for the prosecution and identified Willie Bedgood as one of the other gunmen at Bedgood's trial. Bedgood was subsequently acquitted.

Prior to Haywood's trial, he made a motion to suppress Stanton's identification of him at the hearing as the individual who had shot Stanton and killed Melba Grate on the grounds that it was the result of an unnecessarily suggestive courtroom confrontation and the admission of the identification testimony would deny Haywood his due process rights. The state trial judge after hearing testimony and argument ruled that there was "nothing suggestive" about the confrontation at the preliminary hearing and, in any event, that Stanton's identification of Haywood had a prior independent origin (he had an excellent oppor-

---

**3.** Illinois discovery rules governing release of police reports and other material are not "operative prior to or in the course of any preliminary hearing." Illinois Supreme Court Rule 411, Ill.Rev.Stat. ch. 110A, § 411.

**4.** Haywood was not the only black male in the courtroom at the time of the identification.

**5.** Stanton testified that he was also "hit again from behind, in the side" as he "tried to break and run to the back." Stanton testified at the preliminary hearing that Haywood shot him twice:

"Q. [Mr. Corkell, Counsel for the Prosecution] How many times did he shoot you?

A. Once—Twice that I know of, but one in the bedroom. It was once in the bedroom and once in the front."

**6.** When Haywood was initially questioned after his arrest, he originally stated he was, in fact, Reginald Moss, and denied that he was at the apartment when the shootings occurred. When confronted with the fact that the police knew his real identity he stated "Okay, then you know who I am. It's been a hard two years staying in front of you all." The petitioner admitted to the police officer that he had been at the apartment on the night in question but denied having shot anyone. Haywood further stated that he was wounded in the shooting but fled from the apartment before police arrived.

tunity to view Haywood at the time the crime was committed) and was therefore reliable. The state trial judge also noted that Stanton had also made an independent identification of Haywood from the pictures displayed to him at the hospital.[7]

At Haywood's trial the defense attempted to cross-examine one of the investigating officers, Thomas McKenna as to whether the two other men identified by Stanton, Daniels and Bedgood, as Haywood's fellow gunmen had been charged, and if so, whether they were convicted.[8] The state objected and the trial court sustained the objection as being irrelevant.

The petitioner was convicted of murder, attempted murder, and aggravated battery in the Circuit Court of Cook County, Chicago, Illinois. His conviction was affirmed by the Illinois Appellate Court. *People v. Haywood*, 60 Ill.App.3d 236, 17 Ill.Dec. 329, 376 N.E.2d 328 (Ill.App.Ct.1978). The Illinois Appellate Court rejected both of the arguments Haywood advances on this appeal holding (1) that "the record reflects that Stanton ... [had] an excellent opportunity to view the defendant during the commission of the instant crimes and the trial court did not err in allowing into evidence Stanton's identification of the defendant at the preliminary hearing," 17 Ill.Dec. at 335, 376 N.E.2d at 334, and (2) that the trial court did not abuse its discretion in not allowing cross examination regarding whether Bedgood and Daniels had been charged and convicted since "the jury ... could have been invited into an area of conjecture and speculation" as to why Bedgood was charged and tried but not convicted and Daniels was charged but never brought to trial. *Id.* at 336, 376 N.E.2d at 335. Haywood was denied leave to appeal

7. The following exchange took place at the suppression hearing:

"MR. KLEIN [Counsel for the prosecution]: Is your Honor also taking into account the proper photographic identification subsequent to the time and prior to the in-court identification?

THE COURT: I understand that was part of the evidence brought up here that he identified him based upon photographs that were shown to him subsequent to the day of the crime.

MR. KLEIN: Prior to the date of the in-court identification.

THE COURT: I understand that. But the important point insofar as I am concerned that I find is that he had an excellent opportunity to observe the defendant at the time of the crime and he identified him as seeing him at that particular point and when he sees him again the next time he sees him actually is in the courtroom and he points him out.

MR. ADAM [Counsel for defense]: All right. Now on that Judge, is your finding to be that the manner in which he pointed him out in court as came out of the testimony that that is not suggestive?

THE COURT: Well, I don't find from the evidence that it is suggestive.

MR. KLEIN: Thank you, Judge.

THE COURT: But even accepting your argument that it may be suggestive there is the case here that I cited saying that although it may have suggestive tendencies in some respects, yet, if he had an independent origin based upon an excellent opportunity to observe that individual at the time of the crime when it was committed, and here he did, because that's recited that he knew him, at the time of the crime that he saw him. And that would be sufficient to make the in-court identification, even though there may have been some suggestive tendencies in the courtroom identification.

However, I find in this particular case there is nothing suggestive about putting him on the stand and pointing him out."

8. Daniels was never tried because the state made a prosecutorial decision not to prosecute based on an investigation that revealed that he was neither a participant in the murders nor the attempted murder. At Haywood's trial, the following exchange took place between Daniels and Sam Adam, counsel for Haywood:

"Q. [Adam]: Were you arrested and charged with having done the shooting?

A. [Daniels]: Yes, I was.

Q: Did the state ever proceed to prosecute you on the word of Charlie Stanton for doing the shooting?

Mr. Klein: Objection. [Counsel for the prosecution]

The Court: He may answer.

The Witness: They told me I was indicted for murder, for three murders.

Q. [Adam]: Were you ever prosecuted, that is, were you ever tried, put on trial for any of those offenses?

A: No, they did not put me on trial."

As noted previously, Bedgood was indicted and tried with Stanton testifying for the prosecution at his trial. He was acquitted. Despite the fact that the defense was not allowed to cross-examine McKenna as to whether Bedgood was charged and convicted, the fact that Bedgood was acquitted was brought out in defense counsel's closing argument: "They [the prosecution] didn't want you to know that Stanton picked out Bedgood as being the shooter, and testified at the trial Bedgood was acquitted ..."

by the Illinois Supreme Court and the United States Supreme Court refused to grant certiorari.[9]

Thereafter Haywood petitioned the federal district court for a writ of habeas corpus alleging that his Sixth and Fourteenth Amendment rights were violated when the transcript of Stanton's testimony from his (Haywood's) preliminary hearing was admitted in evidence despite his objection that he did not have an adequate opportunity to cross-examine Stanton (who succumbed before trial).[10] The district court granted the habeas writ finding that the use of the preliminary hearing transcript of Stanton's testimony resulted in the denial of Haywood's right of confrontation since he was not given an adequate opportunity to cross-examine Stanton at the preliminary hearing. *U.S. ex rel. Haywood v. Wolff*, 490 F.Supp. 1154 (N.D.Ill. 1980). This court reversed the granting of the writ of habeas corpus, *U.S. ex rel. Haywood v. Wolff*, 658 F.2d 455 (7th Cir. 1981), and remanded, holding that no constitutional violation occurred since the "[c]ircumstances under which [the witness] Stanton testified in the cross-examination that was allowed at the preliminary hearing provided sufficient indicia of the reliability of his testimony to justify consideration of it by the jury." *Id.* at 464. The district court did not address the other grounds for relief Haywood asserted in his original habeas petition.

On remand, Haywood requested that the district court address the alternative grounds he had asserted in his original petition for habeas corpus relief: (1) that the trial court's reception of Stanton's in-court identification testimony, of him as the murderer of Grate and his (Stanton's) assailant during the preliminary hearing was inadmissible, as being unnecessarily suggestive, thus denying him his due process rights under the Fourteenth Amendment of the United States Constitution and (2) that

the state trial judge's refusal to allow Haywood to cross-examine Officer McKenna about the final disposition of the criminal proceedings against Daniels and Bedgood denied him his Sixth Amendment rights. 658 F.2d at 459 n. 9. The district court denied the petition, stating that since there was an independent photographic identification "[a]ny claimed suggestiveness in the procedures utilized at the preliminary hearing is irrelevant." *United States ex rel. Haywood v. O'Leary*, No. 84 C 7251, Mem.Op. at 9 (N.D.Ill. Jan. 16, 1986) [Available on WESTLAW, DCT database]. The court also found that the state court's refusal to allow cross-examination of Officer McKenna as to the disposition of criminal proceedings against Bedgood and Daniels did not deny Haywood a fair trial. *Id.* at 10. The district court noted that no facts were presented that could even hope to "raise an inference of mistaken identification." *Id.* In reaching its decision the trial court further noted that "the fact that Daniels was never prosecuted was introduced into evidence when he testified for petitioner." *Id.* Haywood requested and the district court granted a certificate of probable cause and Haywood appealed to this court.

Haywood appeals the denial of his writ of habeas corpus making two arguments. Initially, he argues that Stanton's identification of him "was so suggestive as to amount to irreparable mistaken identification and should have been excluded." Secondly, he argues that the district court committed error when finding that he was not denied a fair trial when the state court refused to allow him to cross-examine the police officer (McKenna) as to the results of the criminal proceedings instituted against Daniels and Bedgood.

## II

Haywood argues that since Stanton's in-court identification of him at the prelimi-

---

**9.** Haywood did not pursue his remedies under the Illinois Post Conviction Statute. Ill.Rev. Stat. ch. 38 ¶ 122–1.

**10.** In response to Haywood's motion to preclude the state from introducing Stanton's prior testi-

mony, the trial court judge found that Haywood had an adequate opportunity to cross-examine Stanton at the preliminary hearing thus the transcript was admissible at trial.

nary hearing was so unnecessarily suggestive and conducive to irreparable mistaken identification citing *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972–73, 18 L.Ed.2d 1199 (1967), that he was denied his due process rights under the Fourteenth Amendment of the United States Constitution. Haywood attacks the in-court identification on the grounds (1) that the identification was unduly suggestive because he was the only black seated at the defense counsel table and he was continually referred to as "the defendant," and (2) that the facts surrounding Stanton's alleged encounter with him on the ill-fated evening of July 2, 1972, were such that Stanton's identification was unreliable (i.e., the lighting was bad).

The purpose of a preliminary hearing under Illinois law is for the limited purpose of allowing a court to make a judicial determination as to whether probable cause exists to believe an offense has been committed. Ill.Rev.Stat. ch. 38, § 109–3(a); *Williams v. Kobel,* 789 F.2d 463, 468 (7th Cir.1986); *People v. Puleo,* 96 Ill.App.3d 457, 51 Ill.Dec. 859, 421 N.E.2d 367 (Ill. App.Ct.1981). We emphasize that a preliminary hearing is not intended to be a discovery proceeding. *People v. Horton,* 65 Ill.2d 413, 3 Ill.Dec. 436, 358 N.E.2d 1121 (1976). *See also People v. Blackman,* 91 Ill.App.3d 130, 46 Ill.Dec. 524, 414 N.E.2d 246 (Ill.App.Ct.1980). Our analysis of Haywood's Fourteenth Amendment due process claim involves a two-prong analysis developed in the decisions *Manson v. Brathwaite,* 432 U.S. 98, 109–14, 97 S.Ct. 2243, 2250–53, 53 L.Ed.2d 140 (1977), and *Neil v. Biggers,* 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972). To establish that Stanton's in-court identification of the petitioner as one of the perpetrators of the crimes referred to above was so suggestive as to deny him his protection under the due process clause, Haywood must initially demonstrate that the procedures involved in the in-court identification were unduly suggestive. Secondly, if the court determines that the in-court identification procedures were unduly suggestive,

it must then decide, after considering the totality of the circumstances, whether the identification is reliable to a degree that it does not create a very substantial likelihood of irreparable misidentification. *See United States ex rel. Kosik v. Napoli,* 814 F.2d 1151, 1155 (7th Cir.1987); *United States v. Wisniewski,* 741 F.2d 138, 143 (7th Cir.1984); *United States v. Briggs,* 700 F.2d 408, 412–13 (7th Cir.1983).

At the preliminary hearing, Stanton identified Haywood as his and his girlfriend's attacker after questioning by the prosecution:

"Q: Do you see the person who shot Melba Grate and who shot yourself at the time and date in question in court today?

A: Yes.

Q: Would you point him out and describe how he is dressed.

A: He has on a black suit with a white polka dot shirt.

Mr. Corkell [Counsel for the prosecution]: Let the record reflect that the witness pointed to the defendant, Melvin Haywood, also known as Reginald Moss."

Initially we must determine whether the procedures involved in the in-court identification were unduly suggestive. The district court found that the existence of the prior picture identification (Stanton's selection of four pictures of Haywood at the hospital soon after the attack) gave an independent basis for the in-court identification thus "any claimed suggestiveness in the procedures utilized at the preliminary hearing is irrelevant." [11] *United States ex rel. Haywood v. O'Leary,* No. 84 C 7251, Mem.Op. at 9 (N.D.Ill. Jan. 16, 1986) [Available on WESTLAW, DCT database]. The there was an independent photo identification of petitioner, thus assuming arguendo that the identification at the preliminary hearing was suggestive, the independent identification was not tainted." *Id.* at 8.

A state court's findings are presumed to be accurate: "[§ 2254(d) ] requires the fed-

**11.** Stanton made the photographic identification of Haywood shortly after the shooting occurred on July 2, 1972; the date of Haywood's preliminary hearing was July 11, 1974.

eral courts to show a high measure of deference to the factfinding made by the state courts." *Sumner v. Mata,* 455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982). Haywood's motion to suppress Stanton's in-court identification was denied by the trial court. The following exchange took place at the suppression hearing:

"THE COURT: [B]ut the important point insofar as I am concerned that I find is that he had an excellent opportunity to observe the defendant at the time of the crime and he identified him as seeing him at that particular point and when he sees him again the next time he sees him actually is in the courtroom and he points him out.

MR. ADAM [Counsel for defense]: All right.

Now on that Judge, is your finding to be that the manner in which he pointed him out in court as came out of the testimony that that is not suggestive?

THE COURT: Well, I don't find from the evidence that it is suggestive.

MR. KLEIN [Counsel for the Prosecution]: Thank you, Judge.

THE COURT: But even accepting your argument that it may be suggestive there is the case here that I cited saying that although it may have suggestive tendencies in some respect, yet, if he had an independent origin based upon an excellent opportunity to observe that individual at the time of the crime when it was committed, and here he did, because that's recited that he knew him, at the time of the crime that he saw him. And that would be sufficient to make the in-court identification, even though there may have been some suggestive tendencies in the courtroom identification.

However, I find in this particular case there is nothing suggestive about putting him on the stand and pointing him out."

The Illinois Appellate Court, on direct review held that "an in-court identification of an accused without a prior line-up does not constitute a denial of due process." *People v. Haywood,* 60 Ill.App.3d 236, 17 Ill.Dec. 329, 335, 376 N.E.2d 328, 334 (Ill. App.Ct.1978). The court also held that the

trial court did not err in allowing into evidence Stanton's identification of the defendant at the preliminary hearing stating:

"We furthermore reject defendant's contention that the trial court erred in allowing into evidence the fact that Stanton identified him at the preliminary hearing. Although the practice of showing suspects singly to persons for the purpose of identification has been widely condemned (*Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199), single suspect identifications have been held justified when it was apparent that the witness had an excellent opportunity to observe the defendant during the commission of a crime. (*People v. Speck* (1968), 41 Ill.2d 177, 242 N.E.2d 208.) We believe that in the instant case Stanton had an excellent opportunity to view the defendant during the commission of the crimes for which defendant was charged. Although it is true that Stanton's testimony at the preliminary hearing that numerous lights illuminated the apartment was contradicted somewhat by his testimony at Willie Bedgood's trial that the only lights illuminating the living room were 50 tiny Italian lights surrounding a picture and a light under a fish tank, there is no indication that the lighting conditions were not sufficient to enable Stanton to clearly view his assailant. Moreover, although Daniels testified that Stanton had ingested both drugs and alcohol prior to the incident, Officer Williams testified he smelled no alcohol on Stanton's breath when he encountered him shortly after the incident. A review of Stanton's testimony indicates that he observed the defendant enter the apartment, get up from the couch, draw a gun, and shoot him in the arm. Stanton again saw the defendant in the bedroom where he shot Melba Grate and again shot Stanton. Moreover, Stanton made a photographic identification of the defendant shortly after the incident and had seen defendant's picture on Lee Jackson's dresser the night before the incident. The record reflects that Stanton did indeed have an excellent opportunity to view the defend-

ant during the commission of the instant crimes and the trial court did not err in allowing into evidence Stanton's identification of the defendant at the preliminary hearing."

*Id.* 17 Ill.Dec. at 335–36, 376 N.E.2d at 334–35.

The state trial judge found that there was "nothing suggestive" about having Stanton point out Haywood as the person who killed Melba Grate and shot him (Stanton). The Illinois Appellate Court affirmed. We hold that the manner of identification was not unduly suggestive since the facts establish that (1) Stanton, a black man, entered the courtroom from the rear and took the witness stand upon being called to testify (2) when asked to identify the person who killed his girlfriend and shot him, he pointed out Haywood after looking at him for "four or five seconds" (3) while Haywood, a black male, was seated at a counsel table he was not the only black male in the courtroom, (4) Stanton while confined in the hospital shortly after the shootings, identified four pictures of Haywood as one of the gunmen out of the approximately 120 pictures displayed to him.

Even assuming the manner of identification was unduly suggestive, the evidence establishes that Stanton's in-court identification of Haywood was sufficiently reliable under the totality of circumstances to preclude a very substantial likelihood of irreparable misidentification. In *Kosik, supra,* this court explained:

"It is, of course, not our function in this setting to judge the ultimate accuracy of the identification[ ]; that decision was made by the jury in its role as finder of the facts. Our role is a more limited one of determining if the identification was so unreliable that the defendant's due process right to fair judicial procedures should have precluded an identification at trial.... Thus we determine here only whether the entire evidence regarding [this identification] afforded [it] sufficient reliability to reach the jury despite any undue suggestiveness at the preliminary hearing."

814 F.2d at 1156 (citation omitted) (footnote omitted). The Supreme Court in *Brathwaite, supra,* set forth five factors for determining whether the identification is reliable and thus admissible where there is some question as to the suggestiveness of the identification procedures. These factors are:

"[1] [t]he opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of his prior description of the criminal, [4] the level of certainty demonstrated at the confrontation, and [5] the time between the crime and the confrontation."

432 U.S. at 114, 97 S.Ct. at 2253. In *Love v. Young,* 781 F.2d 1307, 1311 (7th Cir. 1986) we noted in analyzing the *Brathwaite* factors that "The ultimate determination whether the identification is reliable is a mixed question of law and fact; however, findings of subsidiary facts made by the state court (i.e. the opportunity of the witness to observe the suspect) are entitled to a presumption of correctness."

We turn, then, to the facts of this case and apply the *Brathwaite* analysis to them.

I. The opportunity of Stanton to view Haywood at the time of the crime.

Although the state appellate court failed to undertake an analysis of all five factors from *Brathwaite,* it did an extensive analysis of Stanton's opportunity to view Haywood at the time of the crime (the first *Brathwaite* factor) and found that "Stanton had an excellent opportunity to view the defendant during the commission of the crimes," 17 Ill.Dec. at 335, 376 N.E.2d at 334, a finding with which we fully agree. The state court explained:

"We believe that in the instant case Stanton had an excellent opportunity to view the defendant during the commission of the crimes for which defendant was charged. Although it is true that Stanton's testimony at the preliminary hearing that numerous lights illuminated the apartment was contradicted somewhat by his testimony at Willie Bedgood's trial that the only lights illuminating the living room were 50 tiny Italian lights surrounding a picture and a light under a

fish tank, there is no indication that the lighting conditions were not sufficient to enable Stanton to clearly view his assailant. Moreover, although Daniels testified that Stanton had ingested both drugs and alcohol prior to the incident, Officer Williams testified he smelled no alcohol on Stanton's breath when he encountered him shortly after the incident. A review of Stanton's testimony indicates that he observed the defendant enter the apartment, get up from the couch, draw a gun, and shoot him in the arm. Stanton again saw the defendant in the bedroom where he shot Melba Grate and again shot Stanton. Moreover, Stanton made a photographic identification of the defendant shortly after the incident and had seen defendant's picture on Lee Jackson's dresser the night before the incident."

*Id.* It is clear from the record, as cogently detailed by the Illinois Appellate Court that Stanton had an excellent opportunity to view Haywood at the time of the murders since he had the opportunity to observe (1) Haywood enter the apartment, (2) get up from the couch, (3) draw a gun, (4) shoot him in the arm, (5) murder Melba Grate, (6) enter the bedroom, and (7) fire his gun at him once more.

II. Stanton's degree of attention.

In *Kosik,* this court addressed the question of a witness' degree of attention stating: "While opportunity to view focuses on the physical possibility of obtaining a reliable identification, attentiveness requires the court to determine if the witness[ ] actually took advantage of the opportunity. Attentiveness also requires the court to determine what degree of attentiveness the witness[ ] displayed." 814 F.2d at 1158. The Illinois Appellate Court made no specific findings as to Stanton's degree of attention. Stanton testified at the preliminary hearing that on the morning of July 2, 1972, Haywood shot him twice while in the

apartment (in the arm and then again in the stomach a few seconds later). *See* footnote 5, *supra.* Testimony at trial established that Stanton was a short distance from Haywood on the two occasions when Haywood shot him. Stanton's attentiveness to who his attacker was is borne out by the description he gave to Officer McKenna—that his attacker was short and stocky. The police investigation report reflected that Haywood was 5'6" and weighed 180 pounds at the time he was arrested. Although the description was not as detailed as it might have been, it was accurate as to the physical characteristics of his assailant. That Stanton had the necessary degree of attention is further borne out by his photographic identification of Stanton from the picture display he was shown at the hospital after the shooting in which he identified four pictures of Haywood out of the approximately 120 shown to him.[12] We hold the evidence clearly demonstrates that Stanton made a positive identification of his attacker and did have more than an ample opportunity to view his assailant.

III. The accuracy of Stanton's prior description of Haywood.

At trial, Officer McKenna testified that Stanton described his assailant as short and stocky. The police investigation report reflected at the time of his arrest Haywood was 5'6" and weighed 180 pounds. Stanton's description of his attacker obviously was thus consistent with the petitioner's physical makeup. *Cf. Griswold v. Greer,* 712 F.2d 1200, 1204 (7th Cir.1983).

IV. The level of certainty displayed by Stanton in his confrontation with Haywood.

At the preliminary hearing, Stanton positively identified Haywood as the individual who wounded him and killed his girlfriend. The reliability of Stanton's identification at the preliminary hearing is bolstered by his earlier photo identification (choosing four pictures of Haywood out of the approxi-

---

**12.** In his brief Haywood attempts to attack the reliability of Stanton's photo identification of him. Three courts, this court, the district court, and the Illinois Appellate Court, have all determined that Haywood waived any right to challenge the reliability of the photo identification. The Illinois Appellate Court stated that Hay-

wood's "[d]efense counsel specifically waived any objection to Officer McKenna's testimony concerning Stanton's photographic identification." *People v. Haywood,* 60 Ill.App.3d 236, 17 Ill.Dec. 329, 336, 376 N.E.2d 328, 335 (Ill.App.Ct. 1978).

mately 120 that were displayed to him) of Haywood at the hospital after the shootings. As the Illinois Appellate Court noted, 17 Ill.Dec. at 334, 376 N.E.2d at 333, Stanton's cross-examination testimony at the preliminary hearing consisted of seventeen pages in the transcript. The transcript of the preliminary hearing establishes that Stanton never waivered in his identification of Haywood as his assailant. We hold that the evidence is more than sufficient to establish that Stanton had the necessary level of certainty at the confrontation.

V. The time between the crime and the confrontation.

Although slightly more than two years had passed since the shootings occurred and when Stanton made his in-court identification of Haywood, Stanton did make a positive photo identification of Haywood shortly after the shootings. Any effect the two-year time lapse between the shootings and the in-court identification may have had on the reliability of the identification is obviated by Stanton's positive picture identification of Haywood shortly after the shootings.

We hold that Stanton's in-court identification was reliable since the application of the five *Brathwaite* factors establishes there was not a substantial likelihood of irreparable misidentification.

### III

■ Haywood next argues that he was denied a fair trial[13] when the trial judge refused to allow cross-examination of Officer McKenna dealing with the subject of whether Bedgood and Daniels were charged, tried, convicted and sentenced for the same crime. Haywood asserts that since Stanton was the only witness available to the murders and shootings and Stanton's ability to make an accurate identification was critical to the determination of his guilt or innocence, the state trial court should have allowed cross-examination regarding whether the other two men identified by Stanton were charged, tried, convicted and sentenced. At trial the state objected to these inquiries as irrelevant and the trial court sustained the objection. "Unless the claimed error amounted to a fundamental defect so great that inherently resulted in a complete miscarriage of justice, the conviction shall stand." *Cramer v. Fahner*, 683 F.2d 1376, 1385 (7th Cir.1982).

Essentially, Haywood's argument only applies to the disposition of the proceedings against Bedgood since "[t]he fact that Daniels was arrested but never tried was in fact introduced into evidence by Daniels' own testimony. Daniels testified that Stanton identified him as one of the assailants, that he was arrested and charged with these murders, but never brought to trial." *People v. Haywood*, 60 Ill.App.3d 236, 17 Ill.Dec. 329, 336, 376 N.E.2d 328, 335 (Ill.App.Ct.1978); *see* footnote 8, *supra*. As we noted in footnote 8, defense counsel in his closing argument stated that "Stanton picked out Bedgood as being the

---

**13.** At oral argument, the question of whether the petitioner had exhausted his state remedies on this issue was raised (by this court) for the first time. Petitioner's counsel, in a letter to this court dated September 17, 1986, stated that based on his review of the state court proceedings, he could not determine whether a federal constitutional claim had been raised in the Illinois courts. After reviewing the record we are not convinced that Haywood raised this constitutional claim in the state courts and properly exhausted his remedies. However, the exhaustion doctrine does not bar his petition for a writ of habeas corpus since he would now be barred from asserting a claim in the Illinois courts by the Illinois Post Conviction statute, Ill.Rev.Stat. ch. 38 § 122–1, and therefore it would be futile for him to bring his claim in the Illinois courts. *See, e.g., Perry v. Fairman*, 702 F.2d 119, 121

(7th Cir.1983) ("The concerns of comity that underpin the exhaustion requirement would not be advanced by requiring prisoners to file for post-conviction relief with the near certainty that no Illinois court would consider their constitutional claims"); *see also Gornick v. Greer*, 819 F.2d 160, 161 (7th Cir.1987); *United States ex rel. Williams v. Brantley*, 502 F.2d 1383, 1385 (7th Cir.1974). We note that Haywood may have waived his right to assert this claim. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, the State did not raise the waiver issue in its brief or at oral argument. Therefore, the State has waived the waiver issue. *See Barrera v. Young*, 794 F.2d 1264, 1268 (7th Cir.1986) ("claims of forfeiture under *Wainwright* may be forfeited by the state's inattention....")

shooter, and testified at the trial Bedgood was acquitted...." Therefore, the jury did possess information about the disposition of the charges against both Daniels and Bedgood.

Although his argument is somewhat convoluted it appears as a last straw that Haywood is arguing that since Stanton identified three men as gunmen, including Haywood, and one of the others was not prosecuted (Daniels) and the other (Bedgood) was acquitted, he should have been allowed to cross-examine McKenna for the purposes of establishing a possible misidentification. We emphasize Haywood offered almost no proof at trial evidencing possible misidentification of Bedgood and Daniels by Stanton and has failed to cite any evidence in the record in his petition for writ of habeas corpus to establish the same.

At trial and in this court the petitioner has relied on the case *People v. Watkins,* 23 Ill.App.3d 1054, 320 N.E.2d 59 (Ill.App. Ct.1974). In *Watkins* three men, including Joseph Brooks, were charged with various crimes including attempted murder arising from an armed robbery. Two witnesses identified Brooks and the two others as being at the scene of the robbery. Prior to trial, the state nolle prossed the case against Brooks. At the trial of the two remaining defendants, counsel made a detailed offer of proof outside the presence of the jury concerning the alibi of Joseph Brooks.[14] Defense counsel's argument was that it gave rise to an inference that two witnesses' identification of the other defendants was mistaken and the jury should be able to consider such information. The trial court sustained the prosecution's objection to the offer of proof and denied defense counsel the opportunity to question the state's witnesses regarding the identification of Brooks as one of the participants in the crimes. On appeal the Illinois Appellate Court reversed holding that the trial court erred in not allowing defense counsel to cross-examine witnesses as to their identification of Brooks and that evidence of his alibi should have been admitted:

"[u]nder these circumstances, defendants, both of whom were similarly identified at trial by two of the witnesses in question and both of whom also raised defenses of alibi, should have been permitted a reasonable inquiry and cross-examination of [the witnesses] regarding the circumstances surrounding their prior identifications of Joseph Brooks as a participant in these crimes. Since the State had placed Brooks with defendants at the scene of the robbery, questioning the State's witnesses regarding their ability to observe, recollect, and narrate as to the actions of Brooks, based upon the facts in this case, certainly would be pertinent to their ability to do likewise as to the activities of the defendants."

*Id.* 320 N.E.2d at 63. As the district court noted in considering Haywood's habeas petition, the defendant's counsel in *Watkins* made a detailed offer of proof concerning the alibi of the defendant [Brooks] whom the state nolle prossed the case, arguing it could be inferred that the witnesses' identification could have been mistaken. In addition, the two defendants in *Watkins* offered evidence of their own alibis supported by witnesses. In contrast to the offer of proof in *Watkins*, Haywood's offer of proof was limited to a statement that one of the defendants identified by Stanton was acquitted (Bedgood) and that the other defendant (Daniels) was never prosecuted. Since Haywood only made a sketchy offer of proof that Bedgood and Daniels were possibly misidentified, the trial judge was within his discretion in refusing to allow Officer McKenna to be cross-examined about whether Bedgood and Daniels were tried and convicted. It is well-settled that a trial "court has broad authority to control the admission of evidence and the scope of cross-examination ... that will not be disturbed ... unless an abuse of discretion is shown." *United States v. Rovetuso,* 768 F.2d 809, 815 (7th Cir.1985) (citations omitted).

We agree with the reasoning of the Illinois Appellate Court in rejecting Hay-

---

14. Brooks did not testify for the state and was never brought to trial on charges stemming from the armed robbery.

wood's argument that the trial judge improperly refused to allow Officer McKenna to be cross-examined regarding whether Daniels and Bedgood were tried and charged:

> "The fact that Daniels was arrested but never indicted or brought to trial could have been the result of any one of a number of plausible reasons other than a faulty identification by Stanton. The introduction of this evidence could have confused or misled the jury and led to improper speculation on their part. Moreover, the fact that Daniels was arrested but never tried was in fact introduced into evidence by Daniels' own testimony. Daniels testified that Stanton had identified him as one of the assailants, that he was arrested and charged with these murders, but never brought to trial.
>
> For similar reasons, we see no abuse of discretion in the trial court's ruling sustaining the objection to the question concerning the results of Bedgood's trial. While it is true that during Bedgood's trial, Stanton identified Bedgood as one of his assailants, there is nothing in the instant record concerning the evidence presented at Bedgood's trial. Even if we were privy to that evidence, it is most probable that Bedgood's acquittal could have been based on any one of a number of factors other than erroneous identification by Stanton. Under such circumstances, the jury again could have been invited into an area of conjecture and speculation and the trial court, in its discretion, properly sustained the objection."

People v. Haywood, 17 Ill.Dec. at 336, 376 N.E.2d at 335 (emphasis added).

We hold that Haywood was not deprived of his right to a fair trial under the Sixth Amendment when he was denied the opportunity to cross-examine Officer McKenna regarding whether Daniels and Bedgood were charged and convicted. We emphasize Haywood failed to make a detailed offer of proof like the defendants in Watkins, the case he relies upon in attempting to establish the probability of mistaken identification, evidence was admitted that Daniels was never prosecuted and Haywood's counsel in his closing argument disclosed that Bedgood had been identified by Stanton as having been charged, tried and acquitted, and the fact that Daniels was never charged and Bedgood was acquitted could have been based on innumerable factors unrelated to Stanton's identification. The record establishes that a state trial judge was within his discretion in refusing to allow the cross-examination. We note in so holding that even though the petitioner Haywood argues he was unfairly limited in his cross-examination of Officer McKenna, the record establishes the contrary, he had an adequate opportunity to question McKenna on the matters relevant.

## IV

We hold that Haywood was not denied his right to due process since the procedure used in Stanton's in-court identification was not improper, and, in any event, Stanton's identification was reliable. We also hold that Haywood was not deprived of his right to a fair trial when the state trial court refused to allow him to cross-examine Officer McKenna regarding whether Bedgood and Daniels were arrested and charged. Affirmed.