**UNITED STATES**

v.

**PEREZ et al.**

**No. 3:02CR7 (JBA).**

United States District Court,
D. Connecticut.

March 7, 2003.

David A. Ring, U.S. Attorney's Office, Hartford, CT, Peter D. Markle, John A. Danaher, III, Shawn J. Chen, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

Richard A. Reeve, Michael O. Sheehan, Sheehan & Reeve, William M. Bloss, Jacobs, Grudberg, Belt & Dow, P.C., Norman A. Pattis, William & Pattis, Diane

Polan, Michael Dolan, O'Donnell, Riley, Issogna & Dolan, New Haven, CT, Noah Lipman, New York City, Dan E. LaBelle, Halloran & Sage, Westport, CT, for Defendants.

### Ruling on Motion to Suppress Identification [Doc. # 264]

ARTERTON, District Judge.

Defendant* Jose Antonio Perez has moved to suppress a December 10, 2001 photo array identification of him by Mario Lopez and any in court identification of him based on the photo array. A *Wade* hearing [1] was held at which DEA Special Agent Chris Matta and Lopez testified, and pertinent notes from Government interviews with Lopez were introduced into evidence. For the reasons set out below, the motion is DENIED.

I. Background

At the hearing, Agent Matta testified that during a May 25, 2001 interview with Lopez, Lopez described the "owner" of Perez Auto (a Hartford auto repair shop Lopez was taken to on May 23 and 24,

1996) as having a ponytail, being eight years older than Lopez, and having no facial hair.[2] Notes taken by the Assistant U.S. Attorney during that same interview recount that Lopez described the owner as "dark skinned." At the December 10, 2001 identification session, the DEA report prepared by Matta recounts Lopez's description of the "owner" as looking "indian" (but not Native American or from India) because the "owner" was dark and had what Lopez called a year-round tan. Lopez also stated that the "owner" had long hair and facial hair.[3] Agent Matta's notes of the December 10, 2001 interview use the descriptor "indian" seven times in reference to the "owner." At the December 10, 2001 interview, Lopez was shown three photo arrays. He identified defendant Raymond Pina by name, designated defendant Wilfredo Perez as looking familiar, and identified Jose Antonio Perez as the "owner." Lopez was once again shown the Wilfredo Perez photo array, about which he said the person he designated as familiar looked like the "owner" but his face was too fat and his complexion too light.

---

1. *See United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *see also Watkins v. Sowders*, 449 U.S. 341, 349, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) ("A judicial determination outside the presence of the jury of the admissibility of identification evidence may often be advisable.").

2. While defendant's post-hearing brief [Doc. # 359] states that Lopez described the "owner" as being taller than he (Lopez) and weighing between 175 and 190 pounds, this is not supported by the testimony at the hearing or the exhibits, as this description (found in Agent Matta's May 25, 2001 notes [Ex. B]) is in reference to Ollie Berrios: the notes first describe someone as having long hair, being eight years older than Lopez, having a ponytail and no facial hair, and then (several lines down) describe a second "brother." This second brother is described as taller than Lopez and between 175 and 190 pounds. Agent

Matta's testimony at the hearing made clear that the only description given by Lopez of the "owner" at the May 25, 2001 meeting was of the "owner" as having long hair, being eight years older than Lopez, having a ponytail and no facial hair. Defendant's confusion no doubt arises from the confusing label of "brother" given to both the "owner" and Berrios, although this labeling choice is explained by Agent Matta's belief at the time that Berrios and the "owner" were brothers (hence both would be appropriately labeled "brother").

3. There is a discrepancy as to whether Lopez's description of the "owner" prior to the December 10, 2001 interview included having facial hair. Matta testified that Lopez had so stated but was unable to reference any report or interview notes reflecting such a description.

At the *Wade* hearing, Lopez testified that he had met the "owner" on two consecutive days at the auto shop in the summer of 1996, but could not specify the dates or the city in which the shop was located. Lopez testified that the "owner" was five feet eight inches to five feet ten inches tall, weighed between 180 and 200 pounds, had hair tied in a ponytail, and was Puerto Rican. He testified that the "owner" was wearing a motorcycle jacket and leather boots, jeans, possibly a gold chain tucked under his t-shirt. He stated that the "owner" was older than he (Lopez), possibly between 37 and 40 years of age. He described the owner as looking "indian," which he specified meant dark-skinned or light dark-skinned. Finally, he described the "owner" as having light facial hair and possibly a full goatee.

## II. Analysis

■ "When objection is made to a pretrial identification, an analysis of whether the witness may identify the defendant at trial generally involves a two-step inquiry." *United States v. Tortora*, 30 F.3d 334, 338 (2d Cir.1994). First, the Court must determine whether the identification procedures "unduly and unnecessarily suggested that the defendant was the perpetrator." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir.2001). If not, there is no due process obstacle to admissibility of a subsequent in court identification, and the reliability of an eyewitness identification is a matter for the jury. *Id.* (citations and quotations omitted). "If the court finds, however, that the procedures were suggestive, it must then determine whether the identification was nonetheless independently reliable. * * * In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." *Id.* (citations omitted); *see also Manson v. Brathwaite*, 432 U.S. 98, 112, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) ("*Wade* and its companion cases reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability.").

■ On every occasion that Lopez has been asked to describe the "owner" (the May 25 and December 10, 2001 interviews, as well as the *Wade* hearing) his description has included the subject's dark skin, and he specifically distinguished the photograph of Jose Antonio Perez (whom he identified as the "owner") from the photograph of Jose Antonio Perez's similar-looking brother, Wilfredo Perez, on the grounds that, *inter alia*, Jose Antonio Perez had a darker complexion. In the eight photographs presented in the photo array, Jose Antonio Perez's photograph is undisputedly the darkest, notably more so than all others. While Jose Antonio Perez does not appear in court to be a markedly dark-skinned person, what is relevant is that Lopez considered him dark-skinned after seeing him during the two-day period in 1996. *See Raheem*, 257 F.3d at 134 ("Where one witness has emphasized a particular characteristic of the perpetrator in giving a description to the police, a lineup in which only the defendant has that characteristic may well taint the identification of the defendant only by that viewer."). Given Lopez's repeated reference to Jose Antonio Perez's dark complexion on every occasion, and given his further use of Jose Antonio Perez's skin color as a distinguishing referent in examining another photo array, the Court concludes that the use of Jose Antonio Perez's dark-skinned photograph juxtaposed with all other markedly lighter faces resulted in an identification procedure which was unduly suggestive to Lopez. *See id.* at 135–137 (lineup in which defendant appeared in a black leather coat was suggestive to two witnesses who had given the police descriptions that emphasized the suspect's

black leather coat); *United States v. Eltayib*, 88 F.3d 157, 166–167 (2d Cir.1996) (photo array unduly suggestive where witness had described perpetrator as having "a head full of hair, real bushy hair, afro-type hair," defendant's photo was the only one showing a full head of hair, and the other photos pictured subjects with darker skin than the defendant).[4]

 The Court's conclusion that the December 10 photo array was unduly suggestive does not end the matter, however, as the suggestive pretrial identification and any subsequent in-court identification may still be admissible if such identifications are nonetheless independently reliable. *See United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.1991) ("even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability") (citation omitted); *United States v. Salameh*, 152 F.3d 88, 126 (2d Cir.1998) ("A witness who identified a defendant prior to trial may make an in-court identification of the defendant if ... the in-court identification is independently reliable, even though the pretrial identification was unduly suggestive.") (citations omitted). The standard for assessing independent reliability is almost identical for both pretrial identifications and subsequent in-court identifications, *see Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see also* 2 LaFave et

al., Criminal Procedure § 7.4(c) at 673–674 (2d ed.1999)[5], requiring evaluation of the "totality of circumstances," *Neil*, 409 U.S. at 199, 93 S.Ct. 375. In making this determination, the factors to be considered "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199–200, 93 S.Ct. 375.

Having spent some time with Jose Antonio Perez on two consecutive days, Lopez had a significant opportunity to view him. Lopez testified that on the first day, he saw the "owner" (the man he subsequently identified in the photo spread in question) in the office and bay area of the Perez auto shop and outside in front of the garage. He was with Jose Antonio Perez in the office for between five and fifteen minutes, then walked outside with him to view a Grand National which Jose Antonio Perez owned in which Lopez was interested, for between five and ten minutes. On the second day, he again saw Jose Antonio Perez when the latter came into the office and mechanics' bay area. He recalled overhearing a conversation between Ollie Berrios and Jose Antonio Perez in which Jose Antonio Perez stated that once the

**4.** The dispute over whether Lopez had described Perez as having facial hair or not is immaterial to the question of undue suggestion because the presence or absence of facial hair would not have made Perez's photo stand out from the others: each photograph in the array pictured a subject with facial hair. *See United States v. Thai*, 29 F.3d 785, 808 (2d Cir.1994) ("If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs or the utterance of suggestive comments before an identification is made, the principal question is whether the picture of the ac-

cused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit.") (internal citations, quotations and alterations omitted).

**5.** "It is unlikely but theoretically possible that there could be a risk of misidentification which was substantial but not irreparable, meaning that ... the pretrial identification would be suppressed but not the at-trial identification by the same person." (footnote omitted).

job was complete, he was going to give the money to his "brother," referring to Berrios. Later that day, Lopez saw Jose Antonio Perez in the bay area making a telephone call, and subsequently saw him come into the office area and speak with the victim. These repeated opportunities to view Jose Antonio Perez are strong evidence of independent reliability.

Lopez's degree of attention adds somewhat to the reliability of his identification of Jose Antonio Perez. Lopez testified that he was aware by the second day of his role in the events (that he would be driving the motorcycle from which a shooter would kill the victim), thus supporting an inference that "the circumstances prompted a high degree of attention by the witness." LaFave, *supra*, § 7.4(c) at 675 (footnote omitted). This inference is buttressed by Lopez's ability to remember in great detail the layout of the auto shop, as well as details such as the make of a car (Corvette) on the lift in the shop and the color of the van (sky blue) in which he was riding.[6] Lopez's testimony at the hearing, with its relatively detailed description of the "owner," further shows that Lopez had a high degree of attention. The otherwise strong showing on this factor is diminished somewhat, however, by Lopez's statements

on cross examination that his memory was not good because of stress and that at times he was not paying particular attention to the owner.

The accuracy of Lopez's description of Jose Antonio Perez weighs slightly in favor of a conclusion of independent reliability. Lopez's *Wade* hearing description of the "owner" as between 37 and 40 at the time of their summer 1996 encounter is close to Jose Antonio Perez's January 2, 1960 date of birth.[7] While defense counsel argues that the description given by Lopez at the hearing is inaccurate because Jose Antonio Perez is allegedly only five feet seven inches[8] (while Lopez testified five feet eight inches to five feet ten inches tall), the difference in perceived height of an inch or two is not significant, particularly as it could be attributable to the heel height of the leather boots that Lopez testified Jose Antonio Perez had been wearing. *Cf. Dunnigan v. Keane*, 137 F.3d 117, 130 (2d Cir.1998) (two inch height discrepancy in identification was not substantial "given that, while in [the witness's] presence, the robber was not standing still but was squatting, running, or sitting"). The facial hair issue detracts somewhat, however, because the photo-

---

6. Defendant discounts Lopez's degree of attention, arguing that he was able to recall only details of those things he cared about (automobiles and motorcycles in the shop), and not facial features or other physical characteristics of the people he observed. This contention is belied by Lopez's relatively detailed *Wade* hearing description of Jose Antonio Perez. While Lopez's May 25 and December 10, 2001 descriptions of Jose Antonio Perez to Agent Matta are less than comprehensive, the record is scant as to what degree of detail was sought by Agent Matta's questions about Jose Antonio Perez's appearance. Finally, there is no evidence that Lopez's recollection was in any way bolstered or aided prior to the *Wade* hearing, and thus no reason to believe that his detailed *Wade* hearing description of Jose Antonio Perez does not re-

flect his true attention to detail during the 1996 encounter.

Similarly, defendant's contention that Lopez's belief that Jose Antonio Perez "owned" the garage (when in fact Jose Antonio Perez does not actually hold title to the garage) shows Lopez's lack of attention to detail (and thus undercuts the reliability of Lopez's independent recollection) lacks merit. The record is silent as to why Lopez considered Jose Antonio Perez to be the "owner" and thus it is unknown what caused his erroneous belief.

7. *See* Govt's Response Ex. E (Hartford Police mug shot listing Jose Antonio Perez's date of birth).

8. There is no evidence of his actual height in the record.

graph of Jose Antonio Perez used in the photo array (which was taken close in time to Lopez's 1996 meeting with Jose Antonio Perez [9]) distinctly shows Jose Antonio Perez with facial hair (both a goatee and a mustache), but Lopez initially told Matta that Jose Antonio Perez had no facial hair (although he may have later described him with facial hair, *see supra* note 3) and testified at the hearing that Jose Antonio Perez had only a light mustache and possibly a goatee.

Lopez's level of certainty in his identification of Jose Antonio Perez also weighs in favor of a conclusion of independent reliability. In contrast to Lopez's designation of Wilfredo Perez's photograph only as looking familiar (and not as someone he recalled seeing at the auto shop on either of the two days in 1996), he testified to no uncertainty as to his identification of Jose Antonio Perez as the owner. Defense counsel concedes that Lopez appeared certain of this identification.

The five year time lapse between Lopez's observing Jose Antonio Perez and Lopez's selecting his photo from the photo array weighs against a finding of independent reliability, as the Government concedes. *Cf. Neil,* 409 U.S. at 201, 93 S.Ct. 375 ("There was, to be sure, a lapse of seven months between the rape and the confrontation. This would be a seriously negative factor in most cases."). Further time will have passed before any in-court identification is made. This significant lapse is not dispositive, however, as similar lapses have not automatically presented insurmountable barriers. *See United States v. Kwong,* 69 F.3d 663, 667 (2d Cir.1995) (five year passage of time outweighed by other factors evidencing reliability) (*citing Tortora,* 30 F.3d at 338–339 (same) and *United States v. Hill,* 967 F.2d 226, 232–233 (6th Cir.1992) (same)).

In considering the *Neil* factors in light of the totality of the circumstances, the Court concludes that Lopez's significant opportunity to view Jose Antonio Perez, coupled with the showing of a fair degree of attention and significant level of certainty, is sufficient to counterbalance: (1) the lengthy passage of time between the 1996 encounter and both the 2001 identification and any future in-court identification, and (2) "the corrupting effect of the suggestive confrontation," *Dunnigan,* 137 F.3d at 128 (citations omitted). Lopez's two-day opportunity to view Jose Antonio Perez significantly exceeded what has been held sufficient in other cases. *See, e.g., United States v. Wong,* 40 F.3d 1347, 1360 (2d cir.1994) (two to three seconds during restaurant murder); *Salameh,* 152 F.3d at 126–127 (time spent pumping gas); *United States v. Jacobowitz,* 877 F.2d 162, 168 (2d Cir.1989) (five minutes in a well-lighted hotel lobby plus a "brief[ ]" delivery of tickets to hotel room); *see also United States v. Frank,* No. 97cr269(DLC), 1998 WL 292320 at *3 (S.D.N.Y. June 3, 1998) (summarizing additional cases); *cf. Ocasio v. Artuz,* No. 98–CV–7925(JG), 2002 WL 1159892 at *11 (E.D.N.Y. May 24, 2002) (independent reliability based almost exclusively on witness's extensive opportunity to view defendant).

The Court's conclusion is one of "a threshold level of reliability" only, with doubts about the reliability of the identification "go[ing] only to the identification's weight, not to its admissibility," *Dunnigan,* 137 F.3d at 128 (citations omitted), and the significant time gap will presumably be fertile ground for cross examination and argument to the jury:

It is part of our adversary system that we accept at trial much evidence that has strong elements of untrustworthi-

---

**9.** As defendant's post-hearing brief notes, *see* [Doc. # 359] at 4, Agent Matta testified that

the photo of Jose Antonio Perez used in the photo array was taken on June 1, 1996.

ness—an obvious example being the testimony of witnesses with a bias. While identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart the 'integrity' of the adversary process. Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi.

*Manson,* 432 U.S. at 113 n. 14, 97 S.Ct. 2243 (*quoting Clemons v. United States,* 408 F.2d 1230, 1251 (D.C.Cir.1968) (Leventhal, J., concurring)) (internal quotations and alterations omitted).

III. Conclusion

For the reasons set out above, the Court concludes that although the photo array was unduly suggestive, there exists a sufficient independent basis for Lopez's identification of Jose Antonio Perez such that admitting Lopez's identification testimony would work no due process violation. Jose Antonio Perez's motion to suppress identification testimony [Doc. # 264] is DENIED.

IT IS SO ORDERED.