UNITED STATES of America, Appellee,

v.

Gregory MURDOCK, a/k/a Prentice Parker, Appellant.

No. 90–5178.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1990.

Decided March 20, 1991.

Rehearing and Rehearing En Banc Denied May 9, 1991.

Andrea George, Minneapolis, Minn., for appellant.

Christopher J. Bebel, Minneapolis, Minn., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and BATTEY,* District Judge.

* THE HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

MAGILL, Circuit Judge.

Gregory Murdock appeals his conviction for two counts of bank robbery, one count of armed bank robbery, and two counts of using a firearm during the commission of a bank robbery. Murdock claims that the identification procedures and evidence violated his fifth amendment rights; that the district court's [1] refusal to sever the counts forced him to incriminate himself; that his fourth amendment rights were violated when the police requested and received bags which Murdock kept at an acquaintance's apartment; and that the police lacked reasonable articulable suspicion when they stopped his car. We reject these arguments and affirm the convictions. Murdock also claims that he received ineffective assistance of counsel. Because only an incomplete record has been developed on this issue, we dismiss this claim without prejudice.

## I.

On September 20, 1989, Murdock was charged with two counts of bank robbery, two counts of armed bank robbery, and two counts of using a gun during the commission of a bank robbery. All four robberies took place between August 16, 1989, and September 6, 1989.

On August 16, 1989, an undisguised man entered the First Star Metrobank in Minneapolis, Minnesota, and demanded money from the senior teller, Thomas Faust. Faust described the robber as a light-skinned, clean-shaven, black man, 28 to 30 years old, with salt and pepper hair and a high hairline. The robber was wearing a black and white striped shirt with short sleeves. Faust testified that the robber was approximately one to two feet away from him and that he looked into the robber's eyes at least three times. On the same day, only three hours after the Minneapolis First Star bank was robbed, the First Wisconsin National Bank of Milwaukee, located in Milwaukee, Wisconsin, was robbed. The teller identified Murdock as the robber when she was shown a stack of nine photographs.

On August 22, 1989, an undisguised man entered the First Minnesota Bank in St. Paul, Minnesota, and demanded money from a bank teller, Julia Asuncion. She described the robber as a slim, tall, black man with short hair and a thin mustache, who was wearing a dark, short-sleeved shirt of velour or sweatshirt-like material. Asuncion testified that the robber stood a couple of feet away from her and that she looked into the robber's eyes at least two or three times. Three other First Minnesota employees witnessed the robbery: Diane Conney, Gary Chatlain and Todd Peterson. Neither Asuncion, Conney, nor Chatlain was able to identify Murdock in a lineup held on September 14, 1989. Peterson did not attend the lineup, but did identify Murdock in the courtroom during Murdock's trial.

On August 28, 1989, an undisguised man entered the Twin City Federal Bank in Minneapolis, Minnesota, pointed a two-barreled derringer at the teller, Carol Dudley–Trask, and demanded money. Dudley–Trask described the robber as an unshaven black man, 25 to 30 years old, with a large, pointy nose, and a high forehead, who was wearing a blue dress shirt with a white collar. She testified that she looked at the robber three or four times. Nancy Tate, another teller, described the robber as a lean, clean-shaven black man, approximately 5′ 8″ to 5′ 10″ and weighing 147 to 160 pounds. The bank camera photographed the robbery as it happened, producing a picture that was admitted as evidence in Murdock's trial. Neither Dudley–Trask nor Tate attended a lineup, but both positively identified Murdock in court.

On September 5, 1989, an undisguised individual entered Norwest Midland Bank in Minneapolis, pointed a two-barreled derringer at the teller, Mary Schaefer, and demanded money. Schaefer described the robber as a black man with a short, flat-top hair cut, 6′ tall, weighing 150 to 175

---

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

pounds, and about 30 years old. Schaefer did not attend a lineup nor was she shown a photo array, but she did identify Murdock in court.

Later that day, Special Agent John Fossum of the Minnesota Bureau of Criminal Apprehension (BCA) saw a black male passenger in a brown Lincoln Continental counting a large sum of money. Fossum believed the money was drug-related and radioed a description of the car to the Minneapolis Police Department when heavy traffic prevented him from following the car.

The next day, September 6, Officers Shoua Cha and Michael Simmons of the St. Paul Police Department saw the same Lincoln Continental that Fossum had reported. Cha recognized Murdock, who was riding in the Lincoln, as the robber in the photograph obtained during the Twin City Federal Bank robbery. He pulled the vehicle over and called for backup. When the backup arrived, the officers approached the car and questioned the occupants. The officers then arrested Murdock and Richardson, the driver of the car. During the post-arrest search, the officers discovered a two-barreled derringer on Murdock.

The police then went to the apartment of one of Murdock's friends, Glenn King. Because Murdock had spent three nights at King's apartment, Murdock had left some of his belongings there. Murdock had both a key to the apartment and a key to the security door of the apartment building. However, Murdock was not authorized to enter the apartment without King's presence and permission. King testified that he gave Murdock a set of keys because he did not want to "run up and down to check the door." King also testified that Murdock had only used the key to the apartment when he had King's express, contemporaneous approval.

After the police arrested Murdock, several officers went to the Kings' residence. Mrs. King invited the police into the apartment. The police requested and received permission from the Kings to take Murdock's possessions. Mrs. King had washed Murdock's clothing and stored it alongside their own clothing. Mr. King later testified that he and his wife consented to the police request because they did not believe they had a choice. He also testified that the police did not threaten either of them in any way, nor did police indicate that they would retaliate against the Kings if they did not comply. Among the possessions taken into custody was a blue dress shirt with a white collar. This shirt fit the description of the shirt worn by the robber in the August 28 robbery.

At trial, Murdock attempted to sever the counts claiming that he would be prejudiced by the cumulative effect of the evidence presented by the government. Furthermore, Murdock claimed that failure to sever would violate his fifth amendment rights. Murdock failed to make a specific allegation about how these rights would be violated. Murdock also attempted to suppress the evidence obtained by the police pursuant to his arrest and pursuant to their visit to the Kings' apartment. All of these motions were denied.

Murdock was convicted of all but the August 22 robbery. The court sentenced him to a total of 420 months. Murdock filed a motion for a new trial under Rule 33 and a petition for habeas corpus relief under 28 U.S.C. § 2255. The court denied his motion for a new trial and dismissed the habeas petition as premature.

## II.

On appeal, Murdock raises six issues. He claims that the overly suggestive identification procedures violated his due process rights; that the court's refusal to sever the counts forced him to incriminate himself; that the court's failure to scrutinize the reliability of the eyewitness identifications violated his due process rights; that he received ineffective assistance of counsel since his attorney failed to adequately investigate the underlying facts; that the police violated the fourth amendment when they took his clothing from the Kings' apartment; and that the police violated the fourth amendment when they detained him without reasonable articulable suspicion.

## A.

■ Murdock first claims that the government's identification procedures violated his due process rights because they were impermissibly suggestive and unreliable. In addressing these claims we must apply the two-part test the Supreme Court adopted in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). *See also Graham v. Solem*, 728 F.2d 1533 (8th Cir.1984); *United States v. Manko*, 694 F.2d 1125 (8th Cir.1982). First, we must decide whether the challenged confrontation was impermissibly suggestive. If it was, we must then determine whether, under the totality of the circumstances, the suggestive procedures created "a very substantial likelihood of irreparable misidentification." *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254. In making this second determination, reviewing courts must consider: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the time between the crime and the confrontation." *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253 (citing *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972)).

■ Murdock's first identification claim arises out of the fact that three of the four witnesses who positively identified him [2] did so for the first time in court. Murdock argues that this testimony was tainted by the fact that he was sitting at the defense table and was the only African–American in the room. Since this court does not require in-trial identifications to be preceded by pretrial lineups, *see United States v. Wade*, 740 F.2d 625, 628 (8th Cir.1984), the only issue is whether Murdock's presence at the defense table, combined with his being the only African–American in the courtroom at the time of the identification, constituted impermissibly suggestive procedures. It is significant to note that Murdock did not request special seating or object to the ethnic composition of the courtroom at the time of the identification. Furthermore, the witnesses' identifications were open to attack on cross-examination. Therefore, while the procedure may have been suggestive, it was not impermissibly suggestive. Even if the procedure was impermissibly suggestive, under the totality of the circumstances, there was no substantial likelihood of misidentification. All four witnesses had a substantial amount of time to view the robber at the time of the crime; each was fairly attentive during the crime; each was very certain about Murdock's identity; and each identification took place within a reasonable period after the crime. Therefore, even though some of the witnesses' descriptions of the robber were not extremely detailed or accurate, their in-trial identifications were reliable under the totality of the circumstances. *See Ford v. Armontrout*, 916 F.2d 457 (8th Cir.1990) (impermissibly suggestive pretrial identification did not make in-court identification unreliable where victim had ample opportunity to view defendant, and where victim's description of her assailants was accurate and where she did not hesitate in her identification of defendant).

■ Murdock also claims that his constitutional rights were violated when the police used impermissibly suggestive identification procedures when obtaining Faust's identification. The police showed Faust a single photograph of an individual, taken during the robbery of Twin City Federal, and informed Faust that this man had robbed at least one other bank. Murdock correctly points out that single photograph arrays are considered impermissibly suggestive in the Eighth Circuit. *Ruff v. Wyrick*, 709 F.2d 1219, 1220 (8th Cir.1983). However, since we have already determined that Faust's identification was reliable under the totality of the circumstances, Murdock's constitutional rights were not violated by this procedure.

---

**2.** Ms. Asuncion testified that she thought Murdock "might be" the robber, but could not "positively say."

### B.

■ Murdock next argues that the district court's refusal to grant him a separate trial for the different robbery counts forced him to incriminate himself in violation of the fifth amendment. Murdock claims that by not severing the counts, he was required to present evidence of the Wisconsin robbery to defend himself against the Minneapolis First Star robbery. As a threshold matter, we note that the Eighth Circuit grants district courts wide discretion in ruling on motions for severance. *See United States v. Mendoza*, 876 F.2d 639 (8th Cir.1989). Consequently, we review the district court's refusal to sever Murdock's counts under an abuse of discretion standard. Since the separate counts of Murdock's indictment covered robberies carried out over a short period of time and since all five robberies were performed using a similar modus operandi, it was not unreasonable for the district court to refuse to sever the counts. Furthermore, since Murdock had options available to him other than presenting evidence of the Wisconsin robbery charge, he was not forced to incriminate himself.

### C.

■ Murdock raises a claim of prosecutorial misconduct based on an alleged pretrial "dress rehearsal" held by the prosecutor to ensure favorable testimony from the eyewitnesses. Murdock refers to a pretrial meeting held by the prosecutor and an FBI agent to interview potential witnesses. Murdock argues that since the witnesses were presented with evidence that was ultimately shown to them at trial, the prosecutor was required to inform him of the details of this meeting, including what was shown and what the witnesses' initial reactions to the evidence were. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1984). Murdock claims that he could have used such information to impeach the eyewitnesses on cross-examination. However, *Bagley* does not require the prosecution to reveal such information. Under *Bagley*, constitutional error only occurs when information withheld by the prosecutor results in an unfair trial. *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381–82. In this case, Murdock attempted to impeach the eyewitnesses by asking them about the "dress rehearsal" on cross-examination. Therefore, since the jury heard about Murdock's "dress rehearsal" theory and since Murdock did not show that he had an unfair trial, this claim fails.

### D.

■ We refuse to address Murdock's ineffective assistance of counsel claim since it is more properly raised in a petition for habeas corpus. *See United States v. Schmidt*, 922 F.2d 1365, 1369 (8th Cir.1991) (per curiam). Even though the district court dismissed this claim in Murdock's Rule 33 motion, we still believe that it would be better for the district court to develop a more complete record on this issue and, therefore, we dismiss this claim without prejudice.

### E.

■ Murdock further claims that the police violated the fourth amendment when they searched and seized his belongings which were kept at the apartment of acquaintances. The government argues that Murdock did not have a reasonable expectation of privacy in the Kings' apartment and that therefore Murdock does not have standing to raise a fourth amendment claim. Furthermore, the government argues that no fourth amendment violation occurred because the police asked for and received consent from the Kings to search the apartment and to take the items they found.

However, even if we assume that Murdock had a reasonable expectation of privacy, the police obtained the Kings' consent to take Murdock's clothing. While Murdock's control over his possessions in the Kings' apartment may be questionable, there is no doubt that the Kings had, at a minimum, common authority over these possessions and that they were capable of giving consent to the police to take them into custody. *See United States v. Matlock*, 415 U.S. 164, 170–71, 94 S.Ct. 988,

992–93, 39 L.Ed.2d 242 (1974) ("consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared").

### F.

Finally, Murdock claims that the police violated the fourth amendment in their initial encounter with him because they seized him without reasonable suspicion. The government argues that the initial encounter was justified by probable cause and was therefore well within the bounds of the fourth amendment.

Shortly after the robbery of Norwest Midland Bank on September 5, Special Agent Fossum of the BCA saw Murdock riding in a Lincoln Continental. The car caught Fossum's attention because of its erratic driving pattern. When Fossum approached the car, he saw Murdock counting a considerable amount of ten and twenty dollar bills. Fossum made note of the car's vanity license plates ("DAVID O") and tried to follow the car. Because of the traffic, Fossum lost sight of the car. Fossum then reported the incident to the FBI, stating that he believed that the car had been used in the robbery of the Norwest Midland Bank. Approximately fourteen hours later, Officer Cha sighted the Lincoln Continental described by Fossum. In addition to Fossum's description of the car, Officer Cha had a surveillance photo from the Norwest Midland Bank robbery. He compared the robber in the photo with the passenger in the Lincoln Continental and concluded that they were the same person. Based on this information, Officer Cha had probable cause to stop the Lincoln Continental and take Murdock into custody. *See United States v. Marin–Cifuentes*, 866 F.2d 988 (8th Cir.1989). Therefore, Murdock's fourth amendment claim fails.

### III.

For the foregoing reasons, Murdock's conviction on all counts is affirmed.