**UNITED STATES of America,**
**Plaintiff,**

v.

**Paulo T. JAEGER, Defendant.**

**No. 02–00550 ACK.**

United States District Court,
D. Hawai'i.

April 4, 2003.

Michael A. Weight, Shanlyn A.S. Park, Office of the Federal Public Defenders, Honolulu, HI, Georgia K. McMillen, Wailuku, HI, Arthur E. Ross, Law Office of Arthur Ross, Honolulu, HI, for Paulo T. Jaeger (1), defendant.

Loretta A. Sheehan, Office of the United States Attorney, Honolulu, HI, for U.S. Attorneys.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE TO EXCLUDE 404(b) EVIDENCE*

KAY, District Judge.

This matter comes before the Court on Defendant Paulo T. Jaeger's ("Defendant" or "Jaeger") Motion in Limine to Exclude 404(b) Evidence, filed March 17, 2003, ("Defendant's Motion in Limine"). Jaeger asks the Court (1) to exclude evidence relating to his prior criminal record and prior bad acts; (2) to preclude or limit in-court identification testimony; and (3) to prevent the use of a "mug shot" or other photograph of Jaeger at trial. (Defendant's Motion in Limine at 1–2). Plaintiff the United States of America ("Government") opposes the motion in part. (Government's Memorandum in Response to Jaeger's Motion in Limine, filed March 19, 2003, at 3, 5–6 ("Government's Response")).[1] For the reasons stated herein,

the Court GRANTS in part and DENIES in part Defendant's Motion in Limine.

## BACKGROUND

Jaeger is charged with two counts of knowingly and intentionally distributing a quantity of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). According the Government, undercover officers with the Honolulu Police Department ("HPD") purchased a substance commonly known as "crack cocaine" from Jaeger on March 25, 2002 ("March Sale") and April 10, 2002. ("April Sale"). (Government's Response, at 2–3).

## DISCUSSION

### I. Criminal History and Prior Bad Acts

Jaeger argues that evidence of his lengthy criminal record and other bad acts is inadmissible under Rules 404(b) and 609 of the Federal Rules of Evidence ("FRE"). (Defendant's Motion in Limine, at 3–5). The Government rightly concedes both points. (Government's Response, at 3, 5–6). Accordingly, evidence of Jaeger's crimes, wrongs and other bad acts may not be introduced pursuant to Rule 404(b), and Jaeger's criminal record may not be used for impeachment purposes under Rule 609.

### II. Identification Issues

#### A. In–Court Identification.

Noting the inherent suggestiveness of in-court identifications, Jaeger asks the Court to exclude such testimony or, alternatively, to establish procedural safeguards to militate against possible preju-

---

1. The Government separately moved in limine to exclude evidence regarding third-party culpability unless Jaeger presented substantial evidence directly connecting that person with the crimes for which Jaeger is charged. (Government's Motion in Limine to Preclude Evidence of Third Party Culpability, filed March 19, 2003, at 3). At the pretrial conference and hearing on the motions in limine held April 3, 2003 ("April Hearing"), however, defense counsel, stated that third-party culpability was not an issue in this case and the Government thus withdrew its motion.

dice.[2] Such precautions are necessary, Jaeger claims, because he was not the subject of a live or photo line-up and nearly one year has passed since the last alleged sale of crack cocaine to undercover HPD officers. (Defendant's Motion in Limine, at 6).

■ The Government does not directly respond to Jaeger's arguments but suggests that "[i]f the defense raises the issue of misidentification, the government is entitled to rebut with instances of prior police contact with [Jaeger]." (Government's Response, at 3). Although this point is not entirely relevant to the present issue, the Government is nevertheless correct. It is proper "to prove that *at a former time,* when the suggestions of others could not have intervened to create a fancied recognition in the witness'[s] mind, he recognized and declared the present accused to be the person." 4 Wigmore, *Evidence* § 1130 (Chadbourn rev.1972); *see also* Fed.R.Evid. 801(d)(1). So, too, the Government may rebut a defense of misidentification with evidence that the witness was familiar with and able to recognize the defendant. *United States v. Fagan,* 996 F.2d 1009, 1015 (9th Cir.1993); *see also United States v. Easter,* 66 F.3d 1018, 1021 (9th Cir.1995); *United States v. Sanchez,* 988 F.2d 1384, 1393–94 (5th Cir.1993).

Thus, evidence offered to rebut a defense of misidentification presents no problem, provided, of course, that such evidence is otherwise relevant and not unfairly prejudicial.[3] *Fagan,* 996 F.2d at 1015.

■ The foregoing discussion is admittedly abstract as Jaeger does not challenge the admission of evidence tending to rebut a defense of misidentification.[4] Jaeger's Motion in Limine is instead focused on excluding in-court identification testimony. It is well settled, however, that "[w]hen a witness identifies the defendant from the witness's observations at the time of the crime, this testimony [is] ... admissible unless tainted by the prior suggestive identification process." *United States v. Domina,* 784 F.2d 1361, 1369 (9th Cir. 1986); *accord United States v. Burdeau,* 168 F.3d 352, 358 (9th Cir.1999).

■ Although courts have sometimes found fault with in-court identification testimony, *Burdeau,* 168 F.3d at 358, it remains that defendants do not have a constitutional right to "an in-court line-up or other particular methods of lessening the suggestiveness of in-court identification, such as seating the defendant elsewhere in the room." *Id.; accord United States v. Dixon,* 201 F.3d 1223, 1229 (9th Cir.2000); *Burdeau,* 168 F.3d at 358; *Rodriguez v.*

---

**2.** Jaeger argues that an in-court line-up or seating at least two persons at counsel table would be acceptable procedural safeguards. (Defendant's Motion in Limine, at 6).

**3.** All probative evidence is:

In one sense, prejudicial to [the] defendant, but that does not mean that such evidence should be excluded. *Unfair* prejudice results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less probable, *e.g.,* that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart

from its judgment as to his guilt or innocence of the crime charged.
*United States v. Bailleaux,* 685 F.2d 1105, 1111 (9th Cir.1982).

**4.** At the April Hearing, defense counsel argued that evidence of the officers' familiarity with Jaeger would convey to the jury that Jaeger was suspicious or otherwise a "bad guy." Jaeger's Motion in Limine raises no such issues, however. In any event, it became clear upon further questioning by the Court that counsel was primarily concerned with in-court identification testimony and that evidence of Jaeger's criminal history and prior bad acts not come before the jury.

*Peters,* 63 F.3d 546, 556 (7th Cir.1995); *United States v. Brown,* 699 F.2d 585, 593 (2d Cir.1983). The decision to allow an in-court identification is therefore left "to the trial court's sound discretion." *Brown,* 699 F.2d at 593; *accord United States v. Hernandez,* No. 01–50118, 35 Fed.Appx. 300, 305, 2002 U.S.App. Lexis 2332, at *5–6 (9th Cir. Feb. 7, 2002) (pursuant to Rule 36–3(a) of the Ninth Circuit Rules, the Court is not relying on this unpublished opinion for authority); *Domina,* 784 F.2d at 1369. That discretion is abused only when the in-court identification testimony given is "so 'unnecessarily suggestive and conducive to irreparable misidentification as to amount to a denial of due process of law ....' " *Domina,* 784 F.2d at 1369 (quoting *United States v. Williams,* 436 F.2d 1166, 1168–69 (9th Cir.1970)); *see also Burdeau,* 168 F.3d at 358; *Dixon,* 201 F.3d at 1229.

■ This is not such a case. According to the Government, HPD officers purchased crack cocaine from Jaeger on two nonconsecutive occasions. (Government's Response, at 2–3). The Government further asserts that Jaeger was known to one of the HPD officers before the alleged transaction and described and identified by the other HPD officer immediately following a similar sale. (Governments's Response, at 2–3). On these facts, there is neither a danger that the identification of Jaeger as the perpetrator was unduly suggestive nor a substantial likelihood of misidentification at trial.[5] *See Dixon,* 201 F.3d at 1229–30; *Rodriguez,* 63 F.3d at 557–58; *Domina,* 784 F.2d at 1369.

■■ Furthermore, even an impermissibly suggestive pretrial identification does not automatically require exclusion of in-court identification testimony if the totality of the circumstances shows the in-court identification to be reliable. *See Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Hernandez,* 35 Fed.Appx. at 303, 2002 U.S.App. Lexis 2332, at *5; *United States v. Hill,* 967 F.2d 226, 230–33 (6th Cir.1992). The reliability of in-court identification testimony is determined by "(1) the witness' opportunity to view the defendant at the time of the incident; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness at the time of the identification procedure; and (5) the length of time between the incident and the identification." *Hernandez,* 35 Fed.Appx. at 303, 2002 U.S.App. Lexis 2332, at *5; *accord Neil,* 409 U.S. at 199–200, 93 S.Ct. 375.

Applying these factors to the instant case, the Court is confident that the proffered in-court identification testimony is reliable. Significantly, the HPD officers who allegedly purchased crack cocaine from Jaeger had an opportunity during the sales to observe him for a relatively long period of time without distraction and, therefore, the first and second *Neil* factors strongly favor allowing in-court identification testimony. *See Neil,* 409 U.S. at 201, 93 S.Ct. 375; *Hernandez,* 35 Fed.Appx. at 303, 2002 U.S.App. Lexis 2332, at *6; *Sanchez,* 988 F.2d at 1389–90; *United States*

5. The facts and procedural posture of this case mirror those giving rise to *Dixon,* which held that the district court did not abuse its discretion in denying the defendant's motion (1) to exclude in-court identification testimony, (2) for an in-court lineup and (3) to examine the witnesses outside the presence of the jury. *See* 201 F.3d at 1230. Of the same import is *Domina,* 784 F.2d at 1367–70, and *United States v. Chea,* No. 99–10467, 2000 WL 1671025, *1, 2002 U.S.App. Lexis 28041, at *2–4 (9th Cir. Nov. 6, 2000) (pursuant to Rule 36–3(a) of the Ninth Circuit Rules, the Court is not relying on this unpublished opinion for authority).

*v. O'Leary*, 827 F.2d 52, 59–60 (7th Cir. 1987).

The third factor also supports the proffered in-court identification testimony because the officer involved in the April Sale was allegedly familiar with Jaeger from prior dealings with the establishment. (Government's Response, at 2). Accordingly, little doubt can be cast on the accuracy of this officer's identification. *See O'Leary*, 827 F.2d at 60. Furthermore, the officer involved in the March Sale purportedly described Jaeger to the surveillance team immediately after the transaction. (Government's Response, at 2). The team then entered the establishment, identified Jaeger and brought him to the window, which allowed the undercover officer to drive past and positively identify Jaeger as the individual who sold him crack cocaine just moments before. *Id.*

The fourth factor is neutral because it cannot be evaluated until the identification testimony is given and the witnesses are cross-examined, at which point the jury will be positioned to weigh the credibility of the same.

Finally, although the length of time between the incidents and the in-court identification is not insubstantial, the HPD officers were either familiar with Jaeger before the sales or described and identified him a short while after. There is, therefore, no reason to suspect that the officers' memories had faded before they determined Jaeger to be the perpetrator. *See Neil*, 409 U.S. at 201, 93 S.Ct. 375. In any event, courts have allowed in-court identification testimony after far more time had passed between the incident and the identification. *See Patterson v. Stewart*, No. 00–15034, 9 Fed.Appx. 770, 772, 2001 U.S.App. Lexis 11420, at *6 (9th Cir.

May 30, 2001) (pursuant to Rule 36–3(a) of the Ninth Circuit Rules, the Court is not relying on this unpublished opinion for authority); *O'Leary*, 827 F.2d at 61; *United States v. Perez*, 248 F.Supp.2d 111, 116 (D.Conn.2003); *Brooks v. Burt*, 02–CV–72026, 2003 WL 345378, *5, 2003 U.S. Dist. Lexis 2016, at *16–17 (E.D.Mich. Jan. 14, 2003).

For the foregoing reasons, the Court finds that an in-court identification does not present a "substantial likelihood of misidentification," *Neil*, 409 U.S. at 201, 93 S.Ct. 375, and, therefore, the jury need not be denied the opportunity to hear the testimony and determine its weight. *See Domina*, 784 F.2d at 1369.

## B. "Mug Shot" or Other Photograph.

Jaeger moves (but presents no supporting arguments) to exclude from trial his "'mug shot' or other photograph." (Defendant's Motion in Limine, at 2). The Government does not specifically address this issue, but a mug shot of unknown date is attached to the Government's Response. (Exhibit "A" attached to Government's Response).[6]

As discussed, the Government may rebut a defense of misidentification with evidence that the officers were familiar with and able to identify Jaeger, provided that the evidence offered is relevant and not unfairly prejudicial. Equally important, however, is the fact that evidence of Jaeger's prior criminal history is inadmissible in this case. And it seems clear that "[i]f direct evidence of [the defendant's] past misdeeds could not [be] introduced before the jury, ... the jury should not be per-

---

**6.** The Government has redacted any markings that would reveal Exhibit "A" to be a mug shot from a prior arrest.

mitted to draw inferences to the same effect from" other testimony.[7] *Smith v. Rhay,* 419 F.2d 160, 164 (9th Cir.1969); *see also United States v. Hines,* 955 F.2d 1449, 1455 (11th Cir.1992); *United States v. Torres–Flores,* 827 F.2d 1031, 1036 (5th Cir. 1987); *Barnes v. United States,* 365 F.2d 509, 510 (D.C.Cir.1966). Thus, a tension exists between the right of the government to introduce evidence showing the defendant to be the perpetrator of the acts charged and the right of the accused to be free from the taint of his criminal past.

 Courts addressing this conflict have generally held that it is error to admit an obvious mug shot from a prior arrest. *See, e.g., Torres–Flores,* 827 F.2d at 1036 (citing cases). This rule was followed and clarified by the First Circuit in *United States v. Fosher,* 568 F.2d 207, 213–14 (1st Cir.1978), which identified three prerequisites to the admission of a defendant's mug shot from a prior arrest:

1. The Government must have a demonstrable need to introduce the photographs; and

2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and

3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

7. A mug shot taken in connection with the crime charged does not pose a similar danger. *See United States v. Mohammed,* 27 F.3d 815, 822 (2d Cir.1994); *United States v. Cochran,* 697 F.2d 600, 608 (5th Cir.1983).

8. The Fifth and Eleventh Circuits have adopted the *Fosher* test. *See Hines,* 955 F.2d at 1455–56; *Torres–Flores,* 827 F.2d at 1037.

9. Jaeger's Motion could be construed as asking the Court to exclude any photograph of

568 F.2d at 214; *accord United States v. Carrillo–Figueroa,* 34 F.3d 33, 40 (1st Cir. 1994).

The Court finds that the *Fosher* test adequately protects the interests of Defendant and the Government and, therefore, adopts the First Circuit's reasoning.[8] Accordingly, mug shots from Jaeger's prior arrests are inadmissible unless the *Fosher* prerequisites are satisfied.

At this point, it is pure speculation whether the Government will offer Jaeger's mug shot from a prior arrest, how such a photograph might be used or what precautions will be taken to ensure that Jaeger's criminal record is not revealed or implied to the jury. Given these uncertainties, the Court will reserve ruling on the admissibility of Jaeger's mug shot from a prior arrest until an appropriate determination can be made.[9]

### CONCLUSION

The Court GRANTS in part and DENIES in Part Defendant's Motion in Limine. The Court holds (and the Government agrees) that evidence of Defendant's prior crimes, wrongs or other bad acts is inadmissible under FRE Rule 404(b) and that Defendant's criminal record is inadmissible for impeachment purposes under Rule 609. The Court further holds that the Government may offer in-court identification testimony. Finally, the Court reserves ruling on the admissibility of Defendant's "mug shot" from a prior arrest until

Jaeger. Photographs that do not intimate Jaeger's criminal history present no problem, assuming that the ordinary standards of admissibility are satisfied. *See Mohammed,* 27 F.3d at 822; *Cochran,* 697 F.2d at 606; *Barnes,* 365 F.2d at 510; *Summers v. Senkowski,* 99 Civ. 9092, 2001 WL 204205, **4–5, 20014 U.S. Dist. Lexis.2035, at *12–13 (S.D.N.Y. Feb. 28, 2001).

a proper determination of that issue can be made.

IT IS SO ORDERED.