2007 ND 37

In the Interest of R.W.S.,
aka R.B.H., Child.

Tyrone Turner, Petitioner
and Appellee,

v.

R.W.S., aka R.B.H., Child, Respondent
and Appellant

and

L.V., Mother, Respondent.

No. 20060167.

Supreme Court of North Dakota.

March 5, 2007.

Tyrone J. Turner, Assistant State's Attorney, Bismarck, N.D., for petitioner and appellee; submitted on brief.

Bradley D. Peterson, Legal Services of North Dakota, Bismarck, N.D., for respondent and appellant; submitted on brief.

MARING, Justice.

[¶ 1] R.W.S. ("Richard"[1]) appeals the juvenile court's orders adjudicating him a delinquent child and placing him with the North Dakota Division of Juvenile Services until March 2007. Richard argues he was denied a fair hearing by having to wear handcuffs and because the in-court identifications were impermissibly suggestive and unreliable. We hold the juvenile court

---

1. The party's name is a pseudonym.

abused its discretion by failing to independently decide whether to remove Richard's handcuffs. We conclude, however, this was harmless error because there is overwhelming evidence of Richard's guilt. We further hold the juvenile court did not violate Richard's right to due process when it allowed the in-court identifications because they were not unnecessarily suggestive and did not lead to a substantial likelihood of irreparable misidentification. We affirm the juvenile court's orders.

I

[¶ 2] On April 18, 2006, a juvenile hearing, presided over by a juvenile court referee, was held to determine whether Richard was a delinquent child. Richard was accused of committing the delinquent offenses of burglary, robbery, and disorderly conduct. Richard was transported to the hearing in handcuffs and remained in handcuffs for the duration of the hearing. At the hearing, Richard asked to have his handcuffs removed. The referee responded: "Well, as I've been told by the presiding judge of the district that this is a matter to be determined by the sheriff's office since they're responsible for security. And so I've been told not to interfere with that decision." Robert and Carol Solberg, witnesses to the alleged offenses, testified at the hearing.

[¶ 3] The Solbergs have a workshop in their backyard. On March 7, 2006, Robert Solberg noticed the workshop's side door was open a few inches and he could see through the door's glass panel that an individual was inside. Robert Solberg yelled at the individual as he was leaving the workshop with a tool belt. The individual threw a wood chisel at Robert Solberg and then attacked him with the tool belt. Robert Solberg knocked the individual to the ground, then detained him. Robert Solberg's son, who had called the police, detained the individual while Robert Solberg inspected the workshop for missing items. When he returned from the shop, he resumed detaining the individual.

[¶ 4] When Carol Solberg heard there was an intruder, she went to the back door of the garage. She saw Robert Solberg standing on the back deck and the individual lying on the ground, facing her. The individual called her names and used inappropriate language. She had a clear view of the individual's face from five to six feet away as the police escorted the individual through the garage after his arrest. The individual was placed in the police vehicle and transported to the police station.

[¶ 5] During Robert Solberg's hearing testimony, he was asked to identify the individual he encountered on March 7, 2006. Solberg identified Richard, who was sitting next to his attorney. Richard's attorney stated: "I'd like the record to also reflect that [Richard] is the only Native American male in this courtroom. He's also the only person in this courtroom who's currently in handcuffs." When asked to identify the individual she saw on March 7, 2006, Carol Solberg pointed to Richard. Richard's attorney again asked that the record reflect that he was the only Native American male at the hearing and the only individual in handcuffs.

[¶ 6] The referee adjudicated Richard a delinquent child for committing the offenses of burglary, robbery, and disorderly conduct. Richard was ordered to be removed from the legal custody of his mother and placed in the custody of the North Dakota Division of Juvenile Services until March 7, 2007.

[¶ 7] Richard requested a review of the referee's order, arguing he was denied his constitutional right to a fair hearing by having to wear handcuffs, and that the in-court identifications were impermissibly

suggestive and unreliable. On review, the juvenile court affirmed the referee's order on the grounds that there was no showing of prejudice and the in-court identifications were supported by the evidence. Richard appeals the juvenile court's orders.

## II

[¶ 8] Under N.D.R.Civ.P. 52(a), this Court reviews a juvenile court's factual findings under a clearly erroneous standard of review, with due regard given to the opportunity of the juvenile court to judge the credibility of the witnesses. *In re K.H.*, 2006 ND 156, ¶ 7, 718 N.W.2d 575. "A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law." *Interest of D.D.*, 2006 ND 30, ¶ 18, 708 N.W.2d 900. This Court reviews questions of law de novo. *In re K.H.*, at ¶ 7.

[¶ 9] Richard does not claim the juvenile court erred in finding him delinquent. Richard argues the juvenile court violated his constitutional rights by refusing to remove his handcuffs at the hearing without independently deciding the necessity of restraints. Richard contends the handcuffs denied him the ability to communicate with his lawyer and assist in his defense, impaired his physical movement and mental faculties, caused psychological harm, interfered with his ability to testify, and was an affront to the dignity of the hearing.

[¶ 10] This is a case of first impression for our Court, as we have not previously addressed the right of either adult defendants or juveniles to appear in court free from physical restraints. When deciding a question of the violation of a federal constitutional right, we look to federal courts for guidance. *See City of Bis-* *marck v. Materi*, 177 N.W.2d 530, 538 (N.D.1970).

[¶ 11] The United States Supreme Court has recently stated that there is near consensus agreement that during a trial's guilt phase, "a criminal defendant has a right to remain free of physical restraints that are visible to the jury; that the right has a constitutional dimension; but that the right may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum." *Deck v. Missouri*, 544 U.S. 622, 628, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005); *see* ABA Standards for Criminal Justice: *Discovery and Trial by Jury* 15–3.2, pp. 188–91 (3d ed.1996).

[¶ 12] In *Deck*, the United States Supreme Court addressed "whether shackling a convicted offender during the penalty phase of a capital case violates the Federal Constitution." 544 U.S. at 624, 125 S.Ct. 2007. The Court held "that the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, unless that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." *Id.* (quoting *Holbrook v. Flynn*, 475 U.S. 560, 568–69, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (emphasis omitted)); *see also Illinois v. Allen*, 397 U.S. 337, 343–44, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (holding restraints may be used when necessary to maintain dignity, order, and decorum in the courtroom). In so holding, the United States Supreme Court examined the reasons that motivate the guilt phase constitutional rule and determined they apply with similar force at the penalty phase, even though "shackles do not undermine the jury's effort to apply that presumption" of innocence because

the defendant has been convicted. *Deck,* 544 U.S. at 632, 125 S.Ct. 2007.

[¶ 13] In *Deck,* the United States Supreme Court reviewed the considerations that militate against the routine use of visible physical restraints during a criminal trial. *Id.* at 630–31, 125 S.Ct. 2007. The Court identified three fundamental legal principles: (1) "the criminal process presumes that the defendant is innocent until proved guilty," and visible physical restraints undermine that presumption, suggesting "to the jury that the justice system itself sees a need to separate a defendant from the community at large;" (2) "the Constitution, in order to help the accused secure a meaningful defense, provides him with a right to counsel," and "[s]hackles can interfere with the accused's ability to communicate with his lawyer;" and (3) "judges must seek to maintain a judicial process that is a dignified process . . . which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment." *Id.* (citations omitted).

[¶ 14] The United States Supreme Court applied these principles and concluded that the latter two considerations, securing a meaningful defense and maintaining dignified proceedings, militate against the routine use of visible physical restraints during the penalty phase of a criminal trial. *Id.* at 632, 125 S.Ct. 2007. The Court also concluded that although the jury was not deciding between guilt and innocence, it was deciding between life and death, an equally important decision. *Id.*

[¶ 15] With respect to a juvenile court proceeding, we recognize the concerns about the effect of visible physical restraints on a jury do not apply. However,

we agree with those courts holding that juveniles have the same rights as adult defendants to be free from physical restraints. *See In the Matter of Millican,* 138 Or.App. 142, 906 P.2d 857, 860 (1995); *In re Staley,* 67 Ill.2d 33, 7 Ill.Dec. 85, 364 N.E.2d 72, 74 (1977). "[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault,* 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). In *Millican,* the Court of Appeals of Oregon held that "two factors warrant our extension of the right against physical restraint to juvenile proceedings. First, the right to remain unshackled is based on considerations beyond the potential for jury prejudice, including inhibition of free consultation with counsel," and "[s]econd, extending the right to remain unshackled during juvenile proceedings is consonant with the rehabilitative purposes" of the juvenile justice system. 906 P.2d at 860 (citations omitted). "Allowing a young person who poses no security hazard to appear before the court unshackled, with the dignity of a free and innocent person, may foster respect for the judicial process." *Id.; see also In re Staley,* 7 Ill.Dec. 85, 364 N.E.2d at 74 (extending to juveniles the right to remain free from restraints in non-jury proceedings absent a showing of clear necessity for restraints).

[¶ 16] The United States Supreme Court, in *Deck,* also held that the constitutional requirement to be free from physical restraints is not absolute. 544 U.S. at 633, 125 S.Ct. 2007. The trial court, in the exercise of its discretion, may take account of special circumstances that call for restraints. *Id.* "But any such determination must be case specific; that is to say, it should reflect particular concerns, say, special security needs or escape risks, related to the defendant." *Id.* The United States Supreme Court concluded that the trial court failed to provide reasons why

the shackles were necessary. *Id.* at 634–35, 125 S.Ct. 2007. Finally, the United States Supreme Court held:

> Thus, where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove beyond a reasonable doubt that the shackling error complained of did not contribute to the verdict obtained.

*Id.* at 635, 125 S.Ct. 2007 (citation omitted).

[¶ 17] We conclude that the juvenile court had a duty to exercise its discretion when Richard requested that his handcuffs be removed during his adjudicatory hearing. The referee violated Richard's due process right to a fair trial when he failed to exercise his discretion and deferred to law enforcement. *See Lakin v. Stine,* 431 F.3d 959, 964 (6th Cir.2005) (holding the trial court's deference to a corrections officer was a violation of due process); *Woodards v. Cardwell,* 430 F.2d 978, 981–82 (6th Cir.1970) (holding the trial court abused its discretion by leaving the decision of whether to physically restrain to the sheriff); *In re A.H.,* 359 Ill.App.3d 173, 295 Ill.Dec. 709, 833 N.E.2d 915, 923 (2005) (holding the trial court, not the sheriff, has discretion to decide whether to leave a respondent in physical restraints); *State v. Carter,* 53 Ohio App.2d 125, 372 N.E.2d 622, 626–27 (Ct.App.1977) (holding the trial court's decision to allow the sheriff to determine if defendant was to be physically restrained was clearly erroneous); *Millican,* 906 P.2d at 860 (holding a conclusory statement by a law enforcement officer or prosecutor of a serious risk of dangerous behavior was not sufficient to meet the independent analysis necessary for the exercise of discretion); *State v. Roberts,* 86 N.J.Super. 159, 206 A.2d 200, 205–06

(1965) (holding the trial court had discretion whether to apply physical restraints).

[¶ 18] The factors the juvenile court should have considered are: the accused's record, temperament, and the desperateness of his situation; the security situation at the courtroom and courthouse; the accused's physical condition; and whether there was an adequate means of providing security that was less prejudicial. *Lakin,* 431 F.3d at 964.

[¶ 19] In the present case, the juvenile court made no findings that Richard posed an immediate and serious risk of dangerous or disruptive behavior or of escape or flight. Therefore, refusal to remove Richard's handcuffs was a violation of his due process rights. Our analysis leads us to whether this violation was harmless error. "[F]ederal constitutional errors do not automatically require reversal if it is shown that they were harmless, but before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *State v. Chihanski,* 540 N.W.2d 621, 623 (N.D. 1995). "In declaring this belief, the court must be convinced that the error did not contribute to the verdict." *Id.* "Furthermore, before making this declaration, the court must review the entire record and determine, in light of all the evidence, the probable effect of any constitutional error upon a criminal defendant's rights." *Id.* at 623–24. The burden is on the beneficiary of a constitutional error to prove the error is harmless beyond a reasonable doubt. *State v. Trieb,* 315 N.W.2d 649, 655 (N.D. 1982).

[¶ 20] Here, the evidence in the record is overwhelmingly in support of the adjudication of guilt. Robert Solberg had a clear view of Richard as he left the Solbergs' workshop and had an extended close view of Richard as he fought off Richard, and

then as he detained Richard on the ground. Carol Solberg also had a clear view of Richard when he was on the ground and as he was escorted through the garage. The Solbergs both identified Richard as the individual they encountered on their property on March 7, 2006. Richard was never out of the sight of either the Solbergs or the police, and he was taken directly from the Solberg house to the police vehicle and then the police station. There is no doubt Richard committed the delinquent offenses of burglary, robbery, and disorderly conduct. *See In re A.H.,* 295 Ill.Dec. 709, 833 N.E.2d at 924 (holding the father's deprivation of his child was supported by overwhelming evidence, therefore, the trial court's failure to analyze need for physical restraints was harmless beyond a reasonable doubt). Here, the juvenile court violated Richard's due process rights, but the error was harmless beyond a reasonable doubt because of the overwhelming evidence against Richard.

### III

[¶ 21] Richard argues that the in-court identifications at the hearing were impermissibly suggestive and unreliable and, therefore, denied him a fair hearing.

[¶ 22] We review federal constitutional questions de novo. *State v. Campbell,* 2006 ND 168, ¶ 6, 719 N.W.2d 374, *cert. denied,* — U.S. —, 127 S.Ct. 1150, — L.Ed.2d — (2007).

[¶ 23] In *State v. Norrid,* 2000 ND 112, 611 N.W.2d 866, we addressed the question of whether an out-of-court identification must be suppressed because it was so unnecessarily suggestive and conducive to irreparable mistaken identification to constitute a denial of due process. In *Norrid,* we analyzed the United States Supreme Court decisions concerning eyewitness identifications. *Id.* at ¶¶ 7–13. These decisions all deal with the exclusion of an

impermissibly suggestive out-of-court identification or an in-court identification that has been tainted by suggestive pretrial identifications. *See Neil v. Biggers,* 409 U.S. 188, 200–01, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States v. Wade,* 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Whether the five factors set out in *Neil v. Biggers,* and again in *Manson v. Brathwaite,* apply to initial in-court identifications has not to date been addressed by the United States Supreme Court.

[¶ 24] The Eighth Circuit Court of Appeals has concluded that a defendant's claim that a first-time in-court identification was made under impermissibly suggestive procedures does implicate the defendant's right to constitutional due process and the *Biggers* and *Manson* factors apply. *United States v. Murdock,* 928 F.2d 293, 297 (8th Cir.1991); *United States v. Davis,* 103 F.3d 660, 669–70 (8th Cir.1996). However, the South Carolina Supreme Court has held: "We conclude, as the majority of courts have, that *Neil v. Biggers* does not apply to in-court identifications and that the remedy for any alleged suggestiveness of an in-court identification is cross-examination and argument." *State v. Lewis,* 363 S.C. 37, 609 S.E.2d 515, 518 (2005). The rationale provided by the South Carolina Supreme Court is "these extra safeguards are not applicable to an in-court identification because the witness' testimony is subject to the same rules of evidence, witness credibility, and cross-examination as all testimony in a criminal trial." *Id.; see also United States v. Domina,* 784 F.2d 1361, 1368–69 (9th Cir.1986) (holding in-court

identification is reviewed under an abuse of discretion standard).

**[¶ 25]** We have held: "Our court looks to decisions of other states for guidance, but it is not bound by those decisions. In respect to questions involving the United States Constitution, not only does our court receive guidance from the decisions of the United States Supreme Court, but it is bound by those decisions." *City of Bismarck v. Materi*, 177 N.W.2d 530, 538 (N.D.1970). Decisions of federal courts other than the United States Supreme Court, interpreting the United States Constitution are considered for guidance. *See generally State v. Lamb*, 541 N.W.2d 457, 459 n. 2 (N.D.1996) (stating that federal decisions construing federal rules similar to our state's rules are considered for guidance.); *Opp v. Source One Management, Inc.*, 1999 ND 52, ¶ 12, 591 N.W.2d 101 (holding when we are interpreting the ND Human Rights Act, we will look to federal interpretations of Title VII for guidance).

**[¶ 26]** In *Norrid*, we stated that the United States Supreme Court, in *Stovall v. Denno*, held "identification testimony must be suppressed if, under the totality of the circumstances, the procedure for identification 'was so unnecessarily suggestive and conducive to irreparable mistaken identification' to constitute a denial of due process." 2000 ND 112, ¶ 8, 611 N.W.2d 866 (quoting *Stovall*, 388 U.S. at 302, 87 S.Ct. 1967). We noted: "Under the *Stovall* due process test, the determination of the admissibility of an identification involves a two-pronged analysis of (1) whether the identification procedure is impermissibly suggestive, and (2) if so, whether the identification nevertheless is reliable under the totality of the circumstances." *Norrid*, at ¶ 10. We also held the defendant has the burden of proving the identification procedure is

impermissibly suggestive, and the State must then show the identification is reliable under the totality of the circumstances. *Id.* Further, we held: "even if an identification procedure is unnecessarily or impermissibly suggestive, there is no due process violation requiring exclusion of identification evidence if the identification is reliable under the totality of the circumstances...." *Id.* ¶ 13. Determining reliability requires the consideration of several factors: " 'The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.' " *Id.* (quoting *Biggers*, 409 U.S. at 199–200, 93 S.Ct. 375). The Eighth Circuit Court of Appeals has analyzed a defendant's claim that a first-time in-court eyewitness identification violated his due process rights because the procedure was impermissibly suggestive and unreliable under the very framework we applied in *Norrid*. *United States v. Murdock*, 928 F.2d 293 (8th Cir.1991); *United States v. Davis*, 103 F.3d 660 (8th Cir.1996).

**[¶ 27]** In *Murdock*, the defendant argued the in-court identification testimony was tainted because he was seated at the defense counsel table and was the only African–American in the room. *Murdock*, 928 F.2d at 297. The *Murdock* Court held, under *Manson*, in addressing these claims "we must apply the two part test" and "[f]irst, we must decide whether the challenged confrontation was impermissibly suggestive. If it was, we must then determine whether, under the totality of the circumstances, the suggestive procedures created 'a very substantial likelihood of irreparable misidentification.' " *Murdock*, 928 F.2d at 297 (quoting *Manson*,

432 U.S. at 116, 97 S.Ct. 2243). The Eighth Circuit Court of Appeals then held that in making this second determination it must consider the *Biggers* and *Manson* five factors. *Murdock,* 928 F.2d at 297. The court stated that it does not require pretrial lineups precede in-trial identifications and, therefore, the only issue in this case was whether Murdock's "presence at the defense table, combined with his being the only African–American in the courtroom at the time of the identification, constituted impermissibly suggestive procedures." *Id.* The court concluded: "[W]hile it may have been suggestive, it was not impermissibly suggestive. Even if the procedure was impermissibly suggestive, under the totality of the circumstances, there was no substantial likelihood of misidentification." *Id.* The court applied the *Biggers* five factors noting that facts supported that the witnesses had a substantial amount of time to view the defendant, the witness were fairly attentive during the crime, the witnesses were very certain about the defendant's identify, and the identifications took place within a reasonable period after the crime. *Id.*

[¶ 28] In *United States v. Davis,* 103 F.3d 660 (8th Cir.1996), the Eighth Circuit Court of Appeals again reviewed a defendant's claim that a first-time in-court identification violated his constitutional right to procedural due process. In that case, the court stated: " 'Reliability is the linchpin in determining the admissibility of identification testimony.' " *Id.* at 669 (quoting *Manson,* 432 U.S. at 113–14, 97 S.Ct. 2243). The court again applied the due process formulation emanating from *Stovall,* 388 U.S. at 302, 87 S.Ct. 1967, and the totality of the circumstances standard and the factors outlined in *Biggers,* 409 U.S. at 199–200, 93 S.Ct. 375 and *Manson,* 432 U.S. at 114, 97 S.Ct. 2243. *Id.* 669–70. In *Davis,* the defendant contended that the first-time in-court identification was made

under "an impermissibly suggestive procedure because Davis was the only African–American male seated at the defense counsel table, and the only other African–American individual present was a man in the back of the courtroom." *Id.* at 670. The court noted that the defendant "made a specific objection to the racial composition of the courtroom and requested that he not be seated at counsel table during the identification procedures." *Id.* The Eighth Circuit Court of Appeals held: "We agree with the Ninth Circuit's assessment that 'there is no constitutional entitlement to an in-court line-up or other particular methods of lessening the suggestiveness of in-court identification, such as seating the defendant elsewhere in the room. These are matters within the discretion of the court.' " *Id.* (citing *Domina,* 784 F.2d at 1369). The Eighth Circuit Court of Appeals concluded that given "the total circumstances, the arguably suggestive nature of the in-court identification was not so impermissibly suggestive as to create 'a very substantial likelihood of irreparable misidentification.' " *Id.* at 671 (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). The court pointed out that the prosecutor's questions were not suggestive, the witness' in-court identification was vigorously attacked on cross-examination, and that under the five factors analysis other circumstances indicated the witness' testimony was reliable. *Id.* at 670.

[¶ 29] Two recent cases, *United States v. Jaeger,* 298 F.Supp.2d 1003 (D.Hawai'i 2003), and *Louisiana v. Jordan,* 813 So.2d 1123 (La.Ct.App.2002), have applied the five factor test from *Biggers* to in-court identifications that were not preceded by pretrial identifications.

[¶ 30] In *Jaeger,* 298 F.Supp.2d at 1005, the defendant was charged with distributing a controlled substance to an un-

dercover police officer. The defendant argued that because a pretrial identification was not conducted and a considerable amount of time had passed from the alleged sale to the trial, in-court identifications should have been excluded or safeguards should have been implemented to prevent prejudice. *Id.* at 1005. The United States District Court for the District of Hawaii held the decision to allow an in-court identification is left to the court's discretion and "[t]hat discretion is abused only when the in-court identification testimony given is 'so unnecessarily suggestive and conducive to irreparable misidentification as to amount to a denial of due process of law....'" *Id.* at 1007 (quoting *Domina*, 784 F.2d at 1369). The *Jaeger* court then applied the *Biggers* factors to determine the reliability of the in-court identification testimony. 298 F.Supp.2d at 1007–08. The court concluded that the in-court identification did not present a substantial likelihood of misidentification. *Id.* at 1008.

[¶ 31] In *Jordan*, 813 So.2d at 1128, the defendant was charged with armed robbery. The victim had viewed the defendant for three to four minutes. *Id.* at 1127. The victim identified the defendant for the first time at trial. *See id.* at 1129. The defendant argued that the court should have excluded the in-court identification on the grounds it was unreliable because the defendant was not identified before the trial. *Id.* at 1130. The court considered the *Manson* factors when it evaluated the reliability of the witness's in-court identification. *Jordan*, 813 So.2d at 1130. "Even if the identification procedure is suggestive, an identification will be permissible if there is not a very substantial likelihood of irreparable misidentification." *Id.* "The opportunity to crossexamine a witness about his in-court identification of the defendant as the perpetrator of a crime will ordinarily

cure any suggestiveness of such an identification." *Id.* The court concluded that application of the *Biggers* factors established that "the in-court identification of defendant was permissible because there did not exist a substantial likelihood of irreparable misidentification." *Id.*

[¶ 32] In *United States v. Perez–Gonzalez*, 445 F.3d 39, 43 (1st Cir.2006), the defendant was charged for involvement in a riot on government property. Prior to trial, law enforcement officials viewed videos of the riot that included the defendant's image. *Id.* The officials identified the defendant for the first time at trial. *See id.* at 48. The defendant argued that the in-court identifications were improperly suggestive and they were likely to lead to misidentification, and that he should have been allowed to sit in the gallery and given an in-court line-up. *Id.* When evaluating an in-court identification, a court first looks to whether an inappropriately suggestive procedure was used. *Id.* If a suggestive procedure is used, the court must decide whether the identification was nonetheless reliable under the totality of the circumstances. *Id.* The Court held exclusion or prohibition of an in-court identification is appropriate only if the court finds a very substantial likelihood of irreparable misidentification. *Id.*

[¶ 33] We hold that the admissibility of an in-court identification that is not preceded by a pretrial identification is to be determined by applying the same analysis we applied in *Norrid* considering whether the in-court identification procedure is unnecessarily suggestive and susceptible to a substantial likelihood of irreparable misidentification. The five *Biggers* and *Manson* factors are to be used to evaluate whether there is a substantial likelihood of irreparable misidentification.

[¶ 34] We recognize the potential for suggestiveness in an initial in-court identification. The in-court identifications of Richard were suggestive because he was the only Native American male in the courtroom, the only individual in handcuffs, and was sitting alone with his attorney at the defense table. Richard never requested, however, procedures at trial that may have lessened the suggestiveness of the in-court identifications. Any suggestiveness was reduced by Richard's opportunity to cross-examine the witnesses and his ability to raise doubts about the accuracy of the identifications. During cross-examination, Richard questioned the witnesses about their encounters with the intruder. Richard had the opportunity to expose possible weaknesses in their identifications, thereby reducing the suggestiveness of the in-court identifications. We conclude that the procedure was not impermissibly suggestive.

[¶ 35] Even if it was impermissibly suggestive, applying the *Biggers* and *Manson* factors to this case, the in-court identifications of Richard did not create a substantial likelihood of irreparable misidentification. Robert Solberg had an excellent view of Richard as he threw the chisel, as Richard attacked him, and as they fought. Both Robert and Carol Solberg had a clear view of Richard as he lay on the ground after being detained by Robert Solberg. Both witnesses devoted their exclusive attention to Richard as he lay on the ground. A prior description of Richard was not necessary because Robert Solberg personally handed over Richard to the police. Richard was apprehended and detained by Robert Solberg while in the commission of his crimes and never left the scene, providing Robert and Carol Solberg certainty that Richard was the intruder. Robert and Carol Solberg witnessed Richard's crimes on March 7, 2006. A juvenile hearing took place on April 18,

2006. Less than six weeks from the witnessing of a crime to the in-court identification is a minimal amount of time.

[¶ 36] Application of the *Biggers* and *Manson* factors establishes that the in-court identifications were properly admitted because there was not a substantial likelihood of irreparable misidentification. Therefore, the juvenile court did not violate Richard's due process rights when it allowed the in-court identifications of Richard.

IV

[¶ 37] In conclusion, the juvenile court violated Richard's due process rights by failing to independently and properly analyze whether to remove Richard's handcuffs; however, this was harmless error because there is overwhelming evidence of guilt in this record. The juvenile court did not violate Richard's due process rights in admitting the in-court identifications because they did not lead to a substantial likelihood of irreparable misidentification. We affirm the juvenile court's orders.

[¶ 38] GERALD W. VANDE WALLE, C.J., and SONJA CLAPP, D.J., and DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 39] The Honorable SONJA CLAPP, D.J., sitting in place of SANDSTROM, J., disqualified.